|1KNOLL, Judge.
Plaintiff, Deanna Lancon, appeals the jury’s allocation of fault between the parties and seeks an increase in quantum for injuries she received in an automobile collision. Mrs. Lancon also contends that the trial court erred in allowing the defendants to question her in the presence of the jury about her health insurance coverage. And finally, Mrs. Lancon assigns as error the trial court’s refusal to grant her motion for judgment notwithstanding the verdict, or in the alternative, for a new trial or for additur. For the reasons which follow, we reverse in part, amend the judgment, and render.
FACTS
On June 22, 1991, Deanna Lancon was on her way to work when she decided to stop by her sister’s home on Caroline Street in New Iberia. As she turned right into her sister’s driveway, she was hit by a vehicle driven by defendant Clarence Evans. The accident aggravated a degenerative arthritic condition that preexisted the accident but which had previously been asymptomatic, and Mrs. Lancon began to experience pain in her shoulders, neck, lower back, and arms. After conservative treatment by two doctors she was referred to a neurosurgeon, who ultimately performed a cervical foraminoto-my at C5-6 on the right and at C6-7 bilaterally.
|2Following a trial on the merits, a jury found Mrs. Lancon sixty-five percent at fault, Mr. Evans thirty-five percent at fault, and awarded Mrs. Lancon $5,000 in total damages. Mrs. Lancon moved for judgment notwithstanding the verdict, or in the alternative, for a new trial or for additur. The trial court denied the motions, and Mrs. Lancon appeals.
ADMISSIBILITY OF TESTIMONY OF INSURANCE COVERAGE
Plaintiffs first assignment of error concerns the admission at trial of testimony that she had health insurance through Mutual of Omaha. The trial judge admitted this evidence for the limited purpose of countering plaintiffs assertion that she could not afford to see a doctor after the accident, and *694 so instructed the jury. However, the testimony elicited on cross-examinatipn established that, in fact, plaintiffs insurance did not cover doctor’s visits. Mrs. Lancon contends that the entire line of questioning was irrelevant and highly prejudicial, and should have been excluded based on the collateral source doctrine. The defendants argue that the plaintiff opened the door to such questioning by testifying that she could not afford follow-up treatment, and that the limiting-instruction given to the jury by the trial judge cured any harm which might have otherwise resulted.
We believe that despite the limiting instruction, the potential for prejudice to Mrs. Lancon-was inherent in the presentation of evidence that she had medical insurance, notwithstanding that it was later discovered that the Mutual of Omaha policy provided no coverage for doctor’s visits. This determination could have easily been made outside the presence of the jury, thereby diminishing the possibility that the jury may have impermis-sibly Considered a collateral source of recovery in awarding damages.
In connection with this issue, we have considered the decision of the Fifth Circuit in Turcich v. Baker, 594 So.2d 505 (La.App. 5th Cir.1992), a case with facts similar to those of the case sub judice. In Turcich, the trial court, over objection, permitted testimony that the plaintiff had received some insurance benefits after an automobile accident. The defendant maintained that the plaintiff had “opened the door” to such questioning by testifying that she could not afford to go to physical therapy. On appeal, the Fifth Circuit agreed that the testimony was introduced for the purpose of impeachment, and held that the trial judge had not abused his discretion in allowing further questioning on the subject |3by defense counsel. We find that Turcich is distinguishable from the present ease and does not conflict with our ruling today.
Although Mrs. Lancon testified that she could not afford to see a doctor after the accident, no “impeachment” was possible in this regard because her hospitalization insurance did not provide coverage for regular doctor’s visits. Counsel for the defendants should not have been allowed free discovery of this information in the presence of the jury. While perhaps the jury did not allow the existence of an insurance policy to influence its decision, it is more likely than not that the entire line of questioning served only to alert the jurors to the possibility that Mrs. Lancon was covered by insurance, and therefore not deserving of full compensation for her injuries.
ALLOCATION OF FAULT
Mrs. Lancon next contends that the jury was manifestly erroneous in its allocation of fault between the parties. The jury found Mrs. Lancon to be sixty-five percent at fault in causing the collision. After reviewing the record as a whole, it is apparent that the jury erred in assessing fault to Mrs. Lancon.
Mrs. Lancon testified at trial that she slowed down as she approached her sister’s driveway, signaled, and started to make a right turn. As she did so, she heard “squeaking brakes in the back.” She looked into her rear view mirror and saw the defendant’s car “coming towards the [right] side.” She swerved back to the left, but the resulting collision was unavoidable. The passenger side of Mrs. Lancon’s 1981 Oldsmobile Regency sustained moderate damage.
Mr. Evans testified by deposition. He stated that Mrs. Lancon drove entirely into the left lane of Caroline Street, as if she intended to park on the opposite side of the road, when she suddenly made a wide, unsig-naled right turn in front of him. In describing the accident, Mr. Evans said, “[W]hen we got up beside of her my wife recognized who it was and she said, ‘oh, my goodness, she’s fixing to turn.’ • And that’s when I looked up and saw her_” (emphasis added). Mr. Evans claimed that “I looked up” in fact meant that he was looking straight ahead at the road, and denied that he was in any way distracted or inattentive before the accident occurred.
|4Mary Evans, the defendant’s wife, was a passenger in the vehicle at the time of the accident. She also testified that it appeared that Mrs. Lancon intended to park on the left side of Caroline Street, and that as her hus *695 band started to drive past Mrs. Lancon’s car, Mrs. Lancon suddenly attempted a wide right turn into the driveway.
Mrs. Lancon testified that after the accident, Mrs. Evans jumped out of the car and told her that “she was sorry that it had happened. Her husband was going too fast, and when she tried to tell him, she said she froze. She seen my lights and my signal. But when she went to tell him, she was — she froze; it wouldn’t come out.” Mrs. Evans denied this. However, Mrs. Evans did admit that she inquired if Mrs. Lancon was hurt and said, “[W]e have insurance. If you want to go to the doctor, go have yourself cheeked.”
Officer Jude Lemaire of the New Iberia Police Department investigated the accident. Describing what he observed when he arrived at the scene, Officer Lemaire said:
“In the 500 block of Caroline, there were two vehicles in the — one was partially off of the right-hand lane, partially in the yard on the right side, and there was a second vehicle that was just ahead of it that was at an angle in front of that — in front of that vehicle.”
Officer Lemaire testified that Mr. Evans was “inattentive or distracted” prior to the accident, and that “there would have been a safe distance between both vehicles if possibly Mr. Evans may have been paying attention to his driving.” Mr. Evans was issued a traffic citation for violation of LSA-R.S. 32:81(A) (“following too close”); Mrs. Lancon was not ticketed.
According to the accident report written by Officer Lemaire, when the two vehicles collided, Mrs. Lancon’s vehicle was completely in the right lane, and at an angle in front of Mr. Evans’ car. Mr. Evans does not dispute this portion of the accident report. These facts alone corroborate Mrs. Lancon’s version of the accident, but were evidently disregarded by the jury. Notwithstanding the objective evidence, it is also apparent that Mr. Evans was following Mrs. Lancon too closely and attempted to pass her on the right without first ascertaining that his movement could be made safely. See LSA-R.S. 32:74.
We are ever mindful that when a finding of fact is based on the jury’s decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). |5However, as in this case, where objective evidence so contradicts the witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable jury would not credit the witness’ story, we may properly find manifest error even in a finding purportedly based upon a credibility determination. Id. In view of the objective evidence contradicting the defendant’s version of the accident, the jury could not reasonably conclude that Mrs. Lancon was at fault in causing the accident. For this reason, we find that the jury was clearly wrong in assigning any percentage of fault to Mrs. Lan-con.
QUANTUM
Finally, Mrs. Lancon contends that the jury erred when it awarded her only $5,000 in total damages. We agree.
Before an appellate court can disturb a quantum award made by the trier of fact, the record must clearly reveal that the trier of fact abused its great discretion in making the award. The question to be answered at the appellate level is whether the award can be reasonably supported by the record, not whether a different award may have been more appropriate. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976); Ferguson v. Village of Dry Prong, 580 So.2d 1015 (La.App. 3d Cir.), writ denied, 585 So.2d 570 (La.1991). In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must look at the individual circumstances of the case before it. Where we find an abuse of discretion, we lower (or raise) the award to the highest (or lowest) amount that is within the range of the reasonable discretion. Coco, supra.
Dr. Jacob Lahasky, a family practice physician in New Iberia, examined Mrs. Lancon on June 24, 1991, two days after the automobile accident. His examination revealed a *696 mild paracervical strain, low back strain, strain of both pectoral muscles, and bruises over both wrists. He prescribed a muscle relaxant and told her to apply heat to her back. She was instructed to return in one week, if needed.
Mrs. Lancon testified that during the following four months, Dr. Lahasky refilled her prescription over the telephone and gave her samples of pain medication so that she would not have to pay for an office visit. She saw Dr. Lahasky again on October 19, for continued complaints of neck pain, particularly after working for several hours. X-rays |6taken of the neck revealed some evidence of degenerative change in the lower cervical spine. Dr. Lahasky applied heat and prescribed an anti-inflammatory drug.
Still complaining of neck pain, Mrs. Lan-eon returned to Dr. Lahasky’s office on December 9. At that time, he prescribed a different type of anti-inflammatory medication. Mrs. Lancon returned again on December 16, with an additional complaint of numbness of the right arm. Dr. Lahasky recommended a soft cervical collar and referred her to Dr. James Hebert, an ortho-paedic surgeon. At this point, Mrs. Lancon stopped working.
Mrs. Lancon first saw Dr. Hebert on January 6, 1992. A cervical MRI performed the following week showed a moderate degree of spinal stenosis at the C5-6 and C6-7 levels, which Dr. Hebert described as consistent with her history and complaints of pain. On January 21, Dr. Hebert told Mrs. Lancon that her symptoms “were probably coming from the aggravation of the preexisting degenerative process in her neck,” which he attributed to the accident, and suggested that physical therapy might be beneficial in eliminating the pain.
On February 26, Mrs. Lancon telephoned Dr. Hebert and reported that after a short period of improvement, she was experiencing more pain than ever before. The duration of her complaints indicated to Dr. Hebert that surgery might be necessary, and he referred her to Dr. Luiz DeAraujo, a neurosurgeon in Lafayette.
Mrs. Lancon saw Dr. DeA’aujo on March 11. Because she had failed to improve with conservative treatment, a myelogram and a CAT scan of the neck were performed. The tests showed impingement of the nerve roots by bone spurs between the 5th and 6th vertebrae on the right side, and between the 6th and 7th vertebrae on both sides. Based upon these results, Dr. DeAraujo recommended that Mrs. Lancon undergo surgery. A cervical foraminotomy at C5-6 on the right and at C6-7 bilaterally was performed by Dr. DeAraujo on April 8, 1992.
After surgery, Mrs. Lancon began to improve slowly. In May, Dr. DeAraujo recommended that she begin a regimen of physical therapy. In early July, he released her back to work three hours per day. After a normal examination in September, he released her back to work six hours per day. When Mrs. Lancon returned in December, however, |7she complained of some stiffness in her neck after working all day. Dr. DeAraujo advised her to continue working only six hours per day until the end of the winter, and to return the next April. By April, 1993, she had improved, and Dr. DeAraujo released her to return to work full-time.
The testimony presented at trial showed that at the time of the accident, Mrs. Lancon was a healthy, active forty-nine year old woman who “was always on the go.” She enjoyed dancing, visiting with her friends, and spending time with her grandchildren. She worked double shifts two or three times per week. Mrs. Lancon testified that she had no problems with her neck before the accident, but that after the accident, she felt as though her “neck wasn’t strong enough to hold [her] head up.” She stated that she now comes home from work, takes a hot shower, and lies down with the heating pad. She no longer visits with her friends and family, no longer goes dancing, and can’t do “much of anything” because of the pain.
Throughout the trial, the defendants took the position that the June 22 accident did not necessitate Mrs. Lancon’s surgery. On July 29, 1991, just five weeks after the first accident, Mrs. Lancón’s car was bumped from behind at a traffic light. The defendants contend that none of Mrs. Lancon’s doctors *697 could testify to a medical certainty that it was the June 22 accident, as opposed to the July 29 accident, which aggravated the preexisting arthritic condition to such an extent as to require surgery.
The defendants bear the burden of proving that the July 29 accident aggravated Mrs. Lancon’s preexisting condition. Turner v. Nationwide Ins. Co., 503 So.2d 734 (La.App. 3d Cir.1987). The defendants have failed to meet this burden. There is no basis in the record for suggesting that the July 29 accident was anything but minor; the investigating officer classified the accident as “a mild tap.” Both parties testified that the incident would not have been reported at all had it not been witnessed by an off-duty police officer. There was no damage to either vehicle and neither party sustained any injuries in the accident. The doctors who testified ultimately attributed the aggravation of Mrs. Lancon’s preexisting injury to the June 22 accident. As this court stated in Turner: “[Conjecture and possibility |8is insufficient to prove an intervening cause; such intervening cause must be proven by a preponderance of the evidence.” 503 So.2d at 737 (citations omitted).
Thus, we find that an award which allows only $5,000 for pain and suffering, medical expenses, property damage, and lost wages is a clear abuse of discretion. Accordingly, we award Mrs. Lancon $35,000, the lowest amount reasonable for pain and suffering under the facts of this case. In addition, she is entitled to special damages of $24,455.54 for medical expenses; $13,535.10 for lost wages[1];380.35 for property damage; and $403.80 for expenses of a rental car. The total award is increased to $74,774.79.
DENIAL OF PLAINTIFF’S POST-VERDICT MOTIONS
Having found that the judgment of the trial court should be reversed for the reasons stated above, we need not address the appellant’s fourth assignment of error.

. The parties stipulated that had Mrs. Lancon worked from December 14, 1991, through the date of trial, July 19, 1993, she would have earned $13,535.10.