704 So.2d 1227 (1997)
Sallie Anne BETHEA, et al., Plaintiffs-Appellants,
v.
MODERN BIOMEDICAL SERVICES, INC., et al., Defendants-Appellees.
No. 97-332.
Court of Appeal of Louisiana, Third Circuit.
November 19, 1997.
*1229 Leopold Weill, III, New Orleans, for Sallie Anne Bethea, et vir.
L. Lane Roy, Timothy W. Basden, Lafayette, for Modern Biomedical Services, Inc., et al.
Douglas Kent Williams, Trenton John Oubre, Baton Rouge, for Health Trust Inc.
Arthur I. Robison, Lafayette, for IMED Corporation.
Gregory Dwayne Maricle, Mandeville, for Pan American Electric, et al.
Janet Leslie MacDonell, Lisa Cutitto Winter, New Orleans, for Hubbell, Inc.
Paul David Escott, Lafayette, for I C Thomasson Associates, et al.
Steven Claude Judice, Baton Rouge, Stephen Gary McGoffin, Daniel C. Palmintier, Lafayette, for Hospital Corp., et al.
M. Candice Hattan, Lafayette, for Canal Insurance Co.
Cyd Sheree Page, Lafayette, for American Casualty Ins. Co.
Nan Marie Landry, Lafayette, for Banner Constructors, Inc., et al.
George Robert Privat, Lafayette, for Fireman's Fund Ins. Co., et al.
Michael Wayne Adley, Lafayette, for Federal Ins. Co.
Before THIBODEAUX, COOKS and SULLIVAN, JJ.
THIBODEAUX, Judge.
Plaintiffs Sally Anne Bethea, et al., filed suit against Modern Biomedical Services, Inc. and its on-site supervisor on December 30, 1993 alleging that the shock she suffered on September 15, 1993 was due to their negligence. Plaintiffs filed a second supplemental and amended petition on September 9, 1994 alleging fault against several new defendants, collectively referred to in this opinion as "the hospital defendants." On March 19, 1996, plaintiffs filed a third supplemental and amended petition stating claims of impairment of a civil claim and spoliation of evidence. Plaintiffs filed a fourth supplemental and amended petition on June 19, 1996 stating claims of negligent and intentional spoliation of the plug and impairment of a civil claim.
The hospital defendants filed a peremptory exception of no right of action and/or cause of action and a peremptory exception for prescription, as well as a motion for summary judgment. Defendant, Modern Biomedical Services, Inc., filed an exception of prescription as to plaintiffs' spoliation claims as well as a motion for summary judgment. The trial judge granted both exceptions of prescription as to the spoliation claims and denied the hospital defendants' exception of no cause of action; he found the hospital defendants' and Modern Biomedical Services, Inc.'s motions for summary judgment to be moot. Plaintiffs appeal asserting that the trial judge erred in granting the prescription exceptions. Modern Biomedical Services, Inc. and the hospital defendants argue that the trial judge erred in denying the exception of no cause of action before that court; further, each set of defendants filed exceptions of no cause of action with this court. Regarding specific statements in plaintiffs' appellant brief, the hospital defendants filed a motion to strike with this court.
For the following reasons, we reverse on the prescription issue. A strong factually connexity exists which is sufficient to relate the supplemental and amending petitions to the September 15, 1993 occurrence. We affirm the trial court's denial of the exception of no cause of action on the spoliation claim.

I.

ISSUES
The issues presented for review in this appeal are the following:
(1) whether the trial court erred in granting defendants' exceptions of prescription;
(2) whether the trial court erred in denying the exception of no cause of action filed on behalf of the hospital defendants; and

*1230 (3) whether this court should grant the hospital defendants' motion to strike specific statements in plaintiffs' appellant brief.

II.

FACTS
On September 15, 1993, Sallie Anne Bethea, a nurse at Medical Center of Southwest Louisiana, suffered an electrical shock while plugging an I.V. pump into a receptacle. After reporting the incident to her supervisor, Mrs. Bethea went to the emergency room where she received treatment from an emergency room physician. According to Dr. Paul Hubbell, Mrs. Bethea now suffers from Reflex Sympathetic Dystrophy as a result of the electric shock to her body.
Mrs. Bethea, her husband, and their child filed suit against Modern Biomedical Services, Inc., (MBS), and its on-site supervisor, Ken O'Toole, on December 30, 1993. Plaintiffs alleged in their original petition that the shock Mrs. Bethea suffered was caused by a defect in the plug which resulted from a failure to properly maintain and repair the machine to which it was connected. Plaintiffs' counsel and expert examined the items on February 17, 1994 at the hospital.
At the inspection, the hospital plant operations manager, Stephen Sonnier, told plaintiffs' counsel that he had preserved the plug, receptacle and cover plate, but was ambiguous as to whether he was the only person to have had possession of the plug. Plaintiffs deposed Mr. Sonnier on August 3, 1994. He stated that he never really had possession of the plug. Mr. Sonnier left the plug at MBS' office at the Medical Center of Southwest Louisiana. According to Mr. Sonnier, this was the first time he had ever relinquished possession of a piece of equipment involved in an injury to anyone at MBS or any other maintenance contractor.
On September 9, 1994, plaintiffs filed a second supplemental and amended petition alleging fault against several new defendants, namely Hamilton Medical Center, Inc. and its parent corporation, Healthtrust, Inc.; all of the defendants named are collectively referred to hereinafter as "the hospital defendants." On March 19, 1996, plaintiffs filed a third supplemental and amended petition stating claims of impairment of a civil claim and spoliation of the plug against MBS, and the hospital defendants. Plaintiffs deposed several MBS employees before filing the third petition. The resulting testimonies revealed factual inconsistencies and conflicts.
On January 19, 1995, plaintiffs deposed Daniel Thomas Briggs, the MBS on-site technician who inspected the I.V. pump the day Mrs. Bethea was shocked. Mr. Briggs first saw the pump in his office attached to a work order which stated a nurse had been shocked by it. Upon visual inspection, Mr. Briggs noted the plug had pitting and carbon on it. Mr. Briggs stated that he opened the plug to inspect it, but quickly recanted stating that he could not remember if he opened the plug. He did state, however, that the plug passed the electrical safety check. After the check, Mr. Briggs proceeded to clean the plug to remove the pitting because with the pitting, it was not safe for use. Unable to make the plug safe for use, Mr. Briggs cut it off and replaced it.
Plaintiffs also deposed Judy Hannan, director of technology for MBS, on January 19, 1995. According to her records, the plug was sent to MBS' office in Irving, Texas from the hospital sometime after October 29, 1993. Ms. Hannan stated that the plug was opened and closed in her presence, but that nothing was touched inside. She also stated that it looked completely normal on the inside. Also present at the inspection were Randy Bullard, CEO of MBS, and Brian Montgomery, an MBS employee. No reports were made of the inspection. Further, MBS did not take any photos of the equipment in question. Ms. Hannan, Mr. Bullard, and Mr. Montgomery sent the plug back to Southwest Medical Center.
On May 30, 1996, MBS filed a motion for summary judgment seeking dismissal of plaintiffs' claims of spoliation of the plug and impairment of a civil claim against it. In the pleading, MBS contended that plaintiffs did not specify the sources of duty to support a claim for negligent spoliation. Moreover, MBS improperly alleged that the plaintiffs' third supplemental and amending petition *1231 did not state a cause of action. On June 17, 1996, the hospital defendants filed a peremptory exception of no right and/or no cause of action asserting that the plaintiffs' third supplemental and amending petition did not state a cause of action for impairment of a civil claim. They also filed a peremptory exception of prescription and a motion for summary judgment, seeking dismissal of plaintiffs' claims against them.
On June 19, 1996, plaintiffs filed a motion for leave to file a fourth supplemental and amended petition which was granted the same day. The fourth pleading delineated MBS' and the hospital defendants' duty to preserve the evidence and not impair plaintiffs civil claim against them. Further, the pleading stated claims for both negligent and intentional spoliation and impairment of a civil claim. On June 24, 1996, MBS filed an exception of prescription as to plaintiffs' claims of spoliation of the plug.
Mr. Bullard was deposed on July 24, 1996. He stated that MBS requested that the plug and receptacle be sent to the Irving, Texas office. Mr. Bullard also stated that the receptacle MBS received at the Irving, Texas office looked brand new, differing greatly from the plug which was worn and pitted. According to Mr. Bullard, the Irving office never received the actual receptacle involved in the shock incident. Regarding the plug, Mr. Bullard stated that once the plug was opened, he put a screwdriver to each of the blades or screws inside the plug to see if they were tight and noted that they did not move. In referring to the inspection of the plug, Ms. Hannan had stated at her deposition that the plug was not touched in any way once it was opened.
On September 9, 1996, the trial judge granted both MBS' and the hospital defendants' exceptions of prescription as to the spoliation of the plug claims. The hospital defendants' exception of no cause of action was denied. The summary judgment motions were found to be moot. Plaintiffs appealed from the written judgment signed on September 20, 1996.
The hospital defendants answered the appeal and requested that this court review the trial court's denial of the no cause of action exception. They also filed a new exception of no cause of action with this court in addition to a motion to strike. MBS also filed an exception of no cause of action with this court requesting that we consider the applicability of this exception on appeal.

III.

LAW AND DECISION

Prescription
Plaintiffs contend that the trial judge erred in granting defendants' peremptory exceptions of prescription pertaining to the claims of spoliation of the evidence and impairment of a civil claim. In addition to filing the original petition, plaintiffs filed three supplemental and amending petitions. The crux of plaintiffs' argument is that the amending petitions relate back to the original, timely filed petition. This argument is based upon La.Code Civ.P. art. 1153 and jurisprudential interpretation of that article.
Louisiana Code of Civil Procedure article 1153 states the following:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
In the frequently cited law review article entitled, "Amendment of Pleadings in Louisiana," 43 Tul.L.Rev. 211, 233 (1969), the Honorable Albert Tate discussed at length the application of La.Code Civ.P. art. 1153 and the liberal interpretation of that article our courts have employed. In that article, he stated the following:
[t]he article is designed to permit amendment despite a technical bar to the matters alleged by the amendmentprovided that the original pleading gives fair notice of the general fact situation out of which the amended claim or defense arises. The article deliberately adopts no test of identity of cause or legal theory between the original and amending petitions; the amendment's thrust need only be based upon or factually relate to ("arise out of") the "conduct, *1232 transaction, or occurrence" originally alleged. If the original timely pleading gives actual notice to a party that a formal claim or defense is being made based upon a particular factual situation, no essential protective purpose of a prescriptive statute is violated by permitting relation back of a postprescription amendment based on the same factual situation. Through the original pleading the opponent knows that judicial relief is sought arising from the general factual situation alleged, and he is put on notice that his evidence concerning it should be collected or preserved. The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period.
(Footnotes omitted). Our jurisprudence is replete with cases wherein supplemental amended petitions which added new parties, new or different causes of action, and new or different relief sought, were all deemed to relate back to timely filed petitions under La.Code Civ.P. art. 1153. See, Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983); Gunter v. Plauche, 439 So.2d 437 (La.1983); Allstate Ins. Co. v. La. Gas Serv. Co., 354 So.2d 503 (La.1978). The essential factors courts uniformly look for is whether the timely filed petitions provided opponents adequate notice of a judicial controversy arising out of a specific set of circumstances, and whether there is a factual connexity between the petitions. Taylor v. Johnson, 617 So.2d 1209 (La.App. 3 Cir.1993).
Plaintiffs' original petition was filed on December 30, 1993. In the petition plaintiffs allege that MBS' negligence was the cause of Mrs. Bethea's accident. In the second supplemental and amended petition filed on September 9, 1994, plaintiffs extend their negligence claim to the hospital defendants. Both petitions were filed within one year of Mrs. Bethea's September 15, 1993 accident.
Plaintiffs contend that the two subsequent petitions filed beyond the one year prescriptive period are directly linked and factually connected to the timely filed petitions, thus attributing to them timely filed status. The third amending petition, filed on March 19, 1996, sets forth claims of spoliation of the plug and impairment of a civil claim against the defendants named in the first two petitions. Plaintiffs' fourth and final supplemental and amending petition, filed on June 19, 1996, further delineates the claims set forth in the third petition in order to clarify that an intentional tort is being alleged.
In this case, plaintiffs originally alleged negligence on the part of MBS and then subsequently named the hospital defendants. They based their pleadings on Mrs. Bethea's alleged accident of September 15, 1993. As a result of plaintiffs' depositions, information surfaced pertaining to the defendants' alleged failure to preserve key evidence, which laid the foundation for an impairment of a civil action claim. The claims ultimately set forth in the third and fourth petitions were natural progressions from the original negligence claim.
The one source of all of the defendants' alleged activities and plaintiffs' subsequent claims pertaining thereto is the September 15, 1993 accident. Moreover, the original petitions adequately defined that the accident, as well as the alleged faulty equipment which led to the accident, were the source of a justiciable controversy. A strong factual connexity binds the four petitions together for without that accident and without the alleged activities flowing from that accident, none of the petitions would have been filed; in essence, the September 15, 1993 accident is the thread that weaves through all of the claims and petitions. Plaintiffs' fourth supplemental and amended petition alleging spoliation of the plug and impairment of a civil claim is as factually related to the occurrence on September 15, 1993 as is plaintiffs' first petition alleging negligence on the part of MBS. We hereby reverse the trial court's judgment on the issue of prescription.

No Cause of Action
The hospital defendants appeal the trial court's denial of their exception of no *1233 cause of action; they also file another exception of no cause of action with this court. The denial of an exception of no cause of action is not a final judgment under La.Code Civ.P. art. 1915 and, therefore, is not subject to appeal. Rather, it is an interlocutory judgment not appealable under La.Code Civ.P. art. 2083. Review of the denial of an interlocutory judgment is more properly pursued through an application for supervisory writs. Nonetheless, we will exercise our supervisory authority and consider the hospital defendants' request to act on the exception of no cause of action in the interest of justice.
MBS filed a peremptory exception of no cause of action for the first time with this court. We will exercise our authority under La.Code Civ.P. art. 2163 to consider its exception.
The hospital defendants and MBS argue that Louisiana does not recognize a cause of action for intentional or negligent impairment of a civil claim where no statutory or contractual duty is imposed on the alleged party at fault. In the two cases where courts have recognized a cause of action for impairment of a civil claim, the defendants had a statutorily imposed duty to preserve evidence for the plaintiff's case and assist in the investigation of the plaintiff's case. See, Fischer v. Travelers Ins. Co., 429 So.2d 538 (La.App. 4 Cir.1983) and Duhe v. Delta Air Lines, Inc., 635 F.Supp. 1414 (E.D.La.1986). At least one Louisiana court has in fact declined to recognize a cause of action for impairment of a civil claim or spoliation of the evidence arising from a general duty and breach of that duty. A specific source of that duty must be alleged. See, e.g., Carter v. Exide Corp., 27,358 (La.App. 2 Cir. 9/29/95), 661 So.2d 698.
This court's understanding and appreciation of the civilian legal system, and La.Civ.Code art. 2315 in particular, yields a different view than that espoused by other Louisiana courts on this issue. La.Civ.Code art. 2315 states in pertinent part that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." This article broadly sets forth the terms by which society's conduct is governed, i.e., that each individual is accountable for his or actions as they affect fellow members of society.
La.Civ.Code art. 2315 speaks in general terms in order to ensure that the specific wrongs not foreseeable by the drafters would be included, for "[a]s the drafters ... realized, no one could foresee all the possible types of civil injuries and accidents that might befall people." Shael Herman, The Louisiana Civil Code: A European Legacy for the United States, 52 (1993). Article 2315 does not limit the notion of fault. Ardoin v. Hartford Accident & Indem. Co., 360 So.2d 1331 (La.1978). The framers of our civil code viewed fault broadly,
as a breach of a preexisting obligation, for which the law orders reparation, when it causes damage to another, and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault. 2M. Planiol, Treatise on the Civil Law, Part 1 §§ 863-865 (1959).
Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151, 1156 (La.1988).
Although there is no statutory duty imposed on the defendants in this case to preserve the evidence and avoid hindering plaintiffs' claim, we find a duty exists under La.Civ.Code art. 2315. The absence of a statutory duty is not tantamount to no duty. The parameters of what constitutes fault in Louisiana reach far and wide in order to hold people accountable for their harmful actions regardless of whether or not their actions are covered by a statutory provision. Intentionally hindering a plaintiff's civil claim when there is no statutory duty to prevent this action is just as violative of our civilian notion of justice and fair play as when a statutory duty is imposed. For purposes of this issue, this court fails to see the benefit of making a distinction between a specific statutory duty and the far-reaching duty La.Civ.Code art. 2315 imposes. Based on the pleadings, we find that a viable cause of action for impairment of a civil claim and spoliation of evidence stands against the defendants in this case. The ruling of the trial judge on this issue is affirmed.

Motion to Strike
The hospital defendants filed with this court a motion to strike certain portions *1234 of plaintiffs' appellant brief. The appellate court should disregard arguments made in an appellant brief which are based upon or make reference to evidence not in the appellate record. Lancon v. State Farm Mutual Ins. Co., 94-256 (La.App. 3 Cir. 10/5&check;94), 645 So.2d 692, writ denied, 95-0153 (La. 3/17/95), 651 So.2d 272. Abiding by this standard principle, we have reviewed each of the statements the hospital defendants refer to in their memorandum supporting their motion to strike. We conclude that the plaintiffs inappropriately included these statements in their appellant brief as they refer to evidence not in the record and mere speculation. This court disregarded the inappropriate statements in deciding the prescription and no cause of action issues raised in this appeal pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal.

IV.

CONCLUSION
For the foregoing reasons, we reverse the trial court judgment on the issue of prescription and affirm on the issue of no cause of action.
REVERSED IN PART AND AFFIRMED IN PART.