779 So.2d 966 (2001)
J.D. CROOKS, et al.
v.
METROPOLITAN LIFE INSURANCE CO., et al.
No. 2000-0947.
Court of Appeal of Louisiana, Third Circuit.
January 17, 2001.
*967 Chris J. Roy, Jr., Jacques Maurice Roy, Co-Counsel, Alexandria, LA, Allen L. Smith, III, Mickey L. Landry, Frank Swarr, New Orleans, LA, Counsel for Plaintiffs/Appellants, J.D. Crooks, et al.
Edward J. Castaing, Jr., Ed Lilly, Crull, Castaing & Lilly, New Orleans, LA, Edward B. McDonough, Jr., Mobile, AL, Counsel for Defendant/Appellee, A.W. Chesterton.
*968 Pamela G. Nathan, Blanchard, Walker, etc., Shreveport, LA, Counsel for Defendant/Appellee, Southern Pipe & Supply Co., Inc.
Kevin O'Bryan, O'Bryan & Schnabel, New Orleans, LA, Counsel for Defendant/Appellee, Cleaver-Brooks.
Michael Parker, Allen & Gooch, Lafayette, LA, Counsel for Defendant/Appellee, The Burnham Corporation.
Glenn Swetman, Troy N. Bell, Robert Vining, New Orleans, LA, Thomas Tyner, Hattiesburg, MS, Counsel for Defendant/Appellee, Garlock, Inc. and Anchor Packing Co.
William L. Schuette, Jr., Jones, Walker, Waechter, etc., Baton Rouge, LA, Counsel for Defendant/Appellee, LCR-M Corporation.
Charles S. McCowan, Mathile W. Abramson, Jay Jalenak, Kean, Miller, Hawthorne, etc., Baton Rouge, LA, Counsel for Defendant/Appellee, Metropolitan Life Ins. Co.
John T. Hainkel, Michael T. Cali, Greg A. Pellegrini, Frilot, Partridge, etc., New Orleans, LA, Counsel for Defendant/Appellee, Owens-Corning.
Charles V. Giordano, Jerald L. Album, Metairie, LA, Counsel for Defendant/Appellee, Rapid-American.
Laura Sanders, Richard Forman, Forman, Perry, Watkins, etc., Jackson, MS, Counsel for Defendant/Appellee, Uniroyal, Inc.
Thomas Brocato, Alexandria, LA, Counsel for Defendant/Appellee, State of Louisiana, DHHR.
Court composed of Judge THIBODEAUX, Judge DECUIR and Judge PETERS.
THIBODEAUX, Judge.
Plaintiffs J.D. Crooks, et al., appeal the trial court's summary judgment dismissal of their cause of action for damages as a result of their exposure to asbestos. The trial court concluded that 1999 La. Acts 989, which amended La.Civ.Code art. 2315,[1] was retroactive and extinguished the plaintiffs' claims. We conclude that the amended portion of Louisiana Civil Code Article 2315, which prohibits medical monitoring as cause of action, cannot be applied in this case because its retroactive application deprives the plaintiffs of a previously vested right and is thus unconstitutional. Therefore, we reverse.

I.

ISSUES
The plaintiffs raise three issues on appeal:
(1) whether medical monitoring existed as a valid cause of action at the time the suit was filed which was prior to its repeal by the legislature;
(2) whether the trial court erred in failing to distinguish between the two different issues of medical monitoring and cancerphobia in this case and whether cancerphobia states a valid cause of action; and,
(3) whether the trial court erred in issuing a summary judgment with regard to three of the plaintiffs' physical injuries resulting from asbestos exposure because of medical evidence suggesting lung tissue changes and abnormalities in these plaintiffs.

II.

FACTS AND PROCEDURAL HISTORY
On April 28, 1997, the plaintiffs-appellants, J.D. Crooks, Gary Edwards, Margaret *969 Fuglaar, Sarah Hamilton, Donald Hill, Audrey Johnson, Margaret Johnson, Jennie Jones, Lydia Leggett, Kenny Lonidier, Betty Norris, Earline Russaw, Clarence Brooks, Gene E. Powell, and George W. McCarty, filed suit against the defendants-appellees, Southern Pipe and Supply, Owens-Corning, Cleaver-Brooks, Burnham Corp., A.W. Chesterton, LCR Corp., UniRoyal, Garlock, Anchor Packing, the State of Louisiana, American Supply Co., Asbestos Corp., LTD., CSR, LTD., Metropolitan Insurance Co., Rapid-American Corporation, for damages for injuries arising from the plaintiffs' exposure to asbestos. Their injuries are alleged to have arisen from one or more of the following conditions: (1) asbestosis; (2) pulmonary or bronchogenic cancer; (3) cancer of various sites and organs; (4) mesothelioma; (5) impaired pulmonary capacity; (6) reduced lung volume; (7) pleural plaques; (8) interstitial lung fibrosis; (9) cardiac and circulatory disease; (10) increased susceptibility to one of the foregoing diseases and other illnesses; and (11) mental anguish associated with one or more of the preceding conditions.
The plaintiffs claim that they were exposed to asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called asbestos. The sites and dates of their exposure to these products were their places of employment, that is, Pinecrest State School and Central State Hospital, in Pineville, Rapides Parish, Louisiana, from 1962 to the present. The plaintiffs allege that these products which were manufactured, distributed, supplied, sold and/or used by the defendants were defective, unreasonably dangerous, and unreasonably dangerous per se.
On September 30, 1999, following plaintiffs' responses to defendants' interrogatories, Southern Pipe and Supply filed a motion for summary judgment based on the failure of the plaintiffs to produce at that time any medical evidence of a diagnosis pertaining to a specific medical condition related to asbestos exposure. The plaintiffs indicated in their interrogatory answers that they planned to seek medical monitoring and/or medical treatment in the future for such problems should the symptoms of asbestosis manifest themselves. While the motions for summary judgment were pending, the plaintiffs filed a Second Supplemental and Amending Petition for damages caused by cancerphobia, or fear of cancer, and for medical monitoring.
On November 24, 1999, the plaintiffs filed a Third Supplemental and Amending Petition alleging that 1999 La. Acts 989, which amended La.Civ.Code art. 2315, was unconstitutional because its retroactive application to their cause of action deprived them of certain vested rights in violation of due process and equal protection laws. On December 22, 1999, the trial court granted Southern Pipe's motion for summary judgment stating that because the plaintiffs did not demonstrate evidence of a current medical condition as a result of their asbestos exposure, they did not have any present damages. The trial court noted that 1999 La. Acts 989, the recent amendment to La.Civ.Code art. 2315, expressly abrogated a Louisiana Supreme Court decision which had recognized medical monitoring as a cause of action. See Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La. 1998); 716 So.2d 355. 1999 La. Acts 989 provided that no damages could be awarded for costs for future medical treatment, services, surveillance or procedures of any kind unless these costs were directly related to a manifest physical or mental injury or disease.
On January 20, 2000, the plaintiffs filed a motion for a new trial wherein they alleged that 1999 La. Acts 989 was unconstitutional as applied to them. They also alleged newly discovered genuine issues of disputed material facts because the interrogatories showed three plaintiffs had physical problems related to asbestos exposure. Subsequently, Cleaver Brooks, *970 Burnham Corporation, Uniroyal, Garlock, Anchor Packing, A.W. Chesterton Company, and the State of Louisiana filed motions for summary judgment. On March 1, 2000, the trial court denied the plaintiffs' motion for a new trial on the grounds that the plaintiffs had no cause of action for future damages or for cancerphobia. Summary judgment with regard to all of the other defendants was granted as well. According to the court, absent present damages, there was no genuine issue of material fact and, therefore, as a matter of law, the movers were entitled to judgment.

III.

LAW AND DISCUSSION

Standard of Review
Appellate courts review summary judgments de novo, under the same criteria which govern a district court's consideration of the appropriateness of summary judgment. See Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville, 615 So.2d 318 (La.1993). A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).
In this suit, the plaintiffs argue that the trial court erred when it granted the defendants' motion for summary judgment. In their first assignment of error, they argue that 1999 La. Acts 989 created new law and that its application to their cause of action deprives them of a constitutionally vested right because it was written after the filing of their petition. They also claim that the trial court confused medical monitoring with cancerphobia and there were material fact at issue. We do not reach the second two issues because we find that application of 1999 La. Acts 989 to the plaintiffs' cause of action is unconstitutional because it deprives them of a vested right.

Retroactive application of 1999 La. Acts 989
The plaintiffs argue that application of the amendment to Article 2315 to their cause of action is unconstitutional. In support, they argue that the amended article consists of substantive law whose retroactive application unconstitutionally deprives them of a previously vested right and thus violates their rights of due process. Although substantive laws may be applied retroactively, they may not in the case where doing so would impair contractual obligations or disturb vested rights.
La.Civ.Code art. 6 requires that we conduct a two-fold inquiry. First, we must determine whether the amendment to the article expresses legislative intent regarding retrospective or prospective application. Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97); 694 So.2d 180. If no such intent is expressed, the enactment must be classified as either substantive, procedural or interpretive. Id. Thus, even where the legislature has expressed its intent to give a law retroactive effect, the law may not be applied retroactively if doing so would impair contractual obligations or disturb vested rights. If it does so, then in spite of legislative pronouncements to the contrary, the law is substantive, rather than procedural or interpretive.
The Louisiana Supreme Court has defined substantive law as a law which creates, confers, defines, destroys, or otherwise regulates rights, liabilities, causes of action, or legal duties. Sudwischer v. Estate of Paul C. Hoffpauir, 97-0785 (La.12/12/97); 705 So.2d 724, cert. denied, 524 U.S. 940, 118 S.Ct. 2347, 141 L.Ed.2d 717 (1998). Louisiana courts have distinguished between substantive, procedural, and interpretive laws as follows:
Substantive laws establish new rules, rights, and duties or change existing ones. Procedural laws prescribe a *971 method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment.
Willis v. Gray Sales & Service, Inc., 96-748, p. 4 (La.App. 3 Cir. 1/22/97); 689 So.2d 522; 97-0525 (La.4/18/97); 692 So.2d 450 (quoting Segura v. Frank, 93-1271, 93-1401 (La.1/14/94); 630 So.2d 714, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994)). When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may be given retrospective effect because it does not change, but merely clarifies, pre-existing law. Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 (La. 1974). True interpretive law changes existing standards by redefining and returning laws to their original meaning, thus providing the legislature with the opportunity to pronounce the correct interpretation to be given to existing laws. Adams v. City of Baton Rouge, 95-2515 (La.App. 1 Cir. 4/30/96); 673 So.2d 624, writ denied, 96-1491 (La.9/20/96); 679 So.2d 439. Planiol explains the exception for interpretive laws as follows: "[i]nterpretive laws do not establish new rules. What they do is to determine the meaning of existing laws. It follows that they may apply to facts previous to their promulgation. Their retroactivity is but apparent, because it is not the interpretive law, but the original law, which applies." 1 M. Planiol, Civil Law Treatise Nos. 249-252 (La.St.L.Inst.Transl.1959) (quoted in St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992)).
Here, there is a clear expression of intent by the legislature that 1999 La. Acts 989 is to be considered interpretive law and that it is to be applied retroactively. The notes on La.Civ.Code art. 2315 concerning legislative intent and applicability state that:
Section 2. The provisions of this Act are interpretative of Civil Code Article 2315 and are intended to explain its original intent, notwithstanding the contrary interpretation given in Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98); 716 So.2d 355, and all cases consistent therewith.
Section 3. The provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date.
La.Civ.Code art. 2315(3).
Thus, given that the legislature has spoken to the issue of retroactivity, our inquiry would ordinarily be at an end. This is not the case, however, where an enactment impairs contractual obligations or vested rights. Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La. 5/9/97), 694 So.2d 180. A statute that changes settled existing law falls outside the category of "interpretive law." Adams, 673 So.2d 624. Thus, we must determine whether the concepts underlying medical monitoring existed as a cause of action prior to the enactment of 1999 La. Acts 989. If it did, then 1999 La. Acts 989 constituted substantive law and cannot be applied retroactively where doing so disturbs plaintiffs' vested rights.
An action for medical monitoring seeks to recover the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm. Bourgeois, 716 So.2d 355. In Bourgeois, the Louisiana Supreme Court explicitly recognized medical monitoring as actionable for the first time. Id. The plaintiffs in Bourgeois showed no symptoms at the time of the trial but had experienced significant occupational exposure to asbestos. Id. The court determined that the defendants should bear the cost of periodic medical examinations in order that the effects of the plaintiffs' exposure could be monitored. Id.
*972 The defendants claim that the Bourgeois decision created an entirely new cause of action. We disagree. Although the decision in Bourgeois represented the first time a Louisiana court had articulated medical monitoring as a valid basis of recovery, Bourgeois did not actually create new law. Article 2315, as enacted over 100 years ago, has always been of sufficient breadth to contain within it the cause of action of medical monitoring. The supreme court's recognition of medical monitoring as a cause of action is more a result of the advancements in diagnostic technology than the court's articulation of a new basis for recovery in tort. In past decisions, this court has explicitly recognized that Article 2315 speaks in general terms in order to ensure that specific wrongs not foreseeable by the drafters would be included, for "the drafters ... realized, no one could foresee all the possible types of civil injuries and accidents that might befall people." Bethea v. Modern Biomed. Serv., Inc., 97-332, p. 11 (La.App. 3 Cir. 11/19/97); 704 So.2d 1227, writ denied, 97-3169 (La.2/13/98); 709 So.2d 760 (quoting Shael Herman, THE LOUISIANA CIVIL CODE: A EUROPEAN LEGACY FOR THE UNITED STATES, 52 (1993)).
La.Civ.Code art. 2315 forms the basis of all tort liability in Louisiana. It provides, in pertinent part, that "[e]very act whatever of man that causes damages to another obliges him by whose fault it happened to repair it." This article, which contains the broad principle that everyone must repair the damage caused by his or her fault, sets out a standard of conduct required of persons in Louisiana in their relationships with one another. Ardoin v. Hartford Accident and Indem. Co., et al., 360 So.2d 1331 (La.1978). This court's understanding and appreciation of the civilian legal system is one of a system in which each individual is deemed accountable for his or her actions as they affect fellow members of society. Bethea, 704 So.2d 1227.
As we have stated in a number of prior decisions, the framers of our civil code viewed fault broadly, that is, as a breach of a preexisting obligation, for which the law orders reparation, when it causes damage to another. See, e.g. Bethea, 704 So.2d 1227; White v. White, 93-1389 (La.App. 3 Cir. 6/15/94); 641 So.2d 538, writ denied, 94-2456 (La.12/19/94); 648 So.2d 402. By using such broad language in their authorship of the civil code, the framers gave the courts the discretion to determine in each case whether or not an anterior duty existed whose breach caused harm. Thus, according to the supreme court, Article 2315 encompasses
innumerable acts which constituted faults under whatever form they appeared. The framers conceived of fault as a breach of a preexisting obligation, for which the law orders reparation, when it causes damage to another, and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault.
Lejeune v. Rayne Branch Hosp., 556 So.2d 559, (La.1990); (quoting 2M. Planiol, TREATISE ON THE CIVIL LAW, PART I §§ 863-865 (1959)); see also Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151 (La.1988).
Damages are a key element for recovery under Article 2315. A defendant's conduct is actionable under the duty/risk analysis of La.Civ.Code art. 2315 where it is both a cause-in-fact of the injury and a legal cause of the harm incurred. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). However, Louisiana law does not restrict damages to a manifest physical injury. For example, the law provides for damages resulting from defamation which may include injury to reputation, personal humiliation, embarrassment, and mental anguish and suffering. Lege v. White, 619 So.2d 190 (La.App. 3 Cir.1993). The civil code also provides for mental anguish or moral damages, a type of nonpecuniary loss. La.Civ.Code art. 1998.
*973 Moreover, future damages have long been recoverable in Louisiana. For example, as the court in Bourgeois noted, when medical expenses are awarded in personal injury suits, they may ordinarily include the cost not only of therapeutic treatment but also of diagnostic testing and longterm monitoring. Bourgeois, 716 So.2d 355. Damages for loss of earning capacity may also be awarded for what the plaintiff could have earned if uninjured, "despite the fact that he may never have seen fit to take advantage of that capacity." Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979).
We find that 1999 La. Acts. 989 effects a change in the substantive law and thus may not be applied retroactively so as to deprive the plaintiffs in this case of their vested rights. Therefore, the defendants' alternative argument that medical monitoring as a cause of action did not exist prior to the Bourgeois decision must also fail.

IV.

CONCLUSION
Based on the foregoing reasons, we reverse the judgment of the trial court granting summary judgment in favor of the defendants and remand the matter for further proceedings. All costs of this appeal shall be paid by the defendants. All other costs are to be assessed following trial on the merits.
REVERSED AND REMANDED.
THIBODEAUX, J., specially concurs and assigns written reasons.
THIBODEAUX, J., concurring.
Article I of the Louisiana Constitution sets forth the purpose of government as the protection of the rights of the individual and the good of the whole. La. Const. art. I, § 1. The legitimate ends of government include securing justice for all, protecting the rights of the people, and the promotion of the happiness and general welfare of the people. Id. In furtherance of this, the three branches of government are given their particular roles to perform. None of these branches, or anyone holding office in one of them, shall exercise power belonging to either of the others. La. Const. art. II, § 2.
The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article. La. Const. art. V, § 1. Thus, it is the province of Louisiana courts to interpret and apply the law. La. Const. art. V, § 2. The legislature may enact remedial legislation shortly following a court's decision that highlights an ambiguity or conflict in a statutory provision. That is, it is the province of the legislature to clarify the law when the courts indicate the necessity of doing so. Grubbs v. Gulf International et al., 625 So.2d 495 (La.1993). Interpreting the law is the designated function of the judiciary, not the legislature.
The Louisiana Supreme Court has often addressed, but never resolved entirely, the issue of whether or not legislation designated from the outset as interpretive violates the principles of separation of powers and independence of the judiciary. However, the court has in fact noted that arguably an "interpretive enactment begins to give the legislature judicial power." St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 818 (La.1992) (quoting H. Alston Johnson, LegislationProcedure and Interpretation, Developments in the Law, 1983-84, 45 LA. L. REV. 341-344 (1984)). Inherent problems with interpretive legislation are particularly brought to the fore in a situation like the one before this court where the legislature has expressly overruled a supreme court decision by professing to interpret a statute and thus reach its "original" meaning, that is, the one intended by the authors of the civil code. Such legislation effectively constitutes the adjudication of cases and micromanagement of the court system. The supreme court has rejected the constitutionality of such legislation noting that:

*974 [T]he principle of separation of powers leaves no room for the adjudication of cases by the legislature, and this may be the true holding of certain Louisiana decisions. [See, e.g., State Licensing Bd. for Contractors v. State Civil Service Comm'n, 240 La. 331, 123 So.2d 76 (1960) ]....
Yiannopoulos, Validity of Patents Covering Navigable WaterbottomsAct 62 of 1912, Price, Carter, and All That, 32 LA. L. REV. 1, 16 (1971) (emphasis supplied); see also 1 M. Planiol, [Civil Law Treatise Nos. 249-252 (LA.ST.L.INST.TRANS l.1959)] § 251.
St. Paul Fire & Marine Ins. Co., 609 So.2d at 819.
The legislature does not interpret the law. The judiciary determines whether a statute that has been enacted by the legislature consists of substantive, procedural, or interpretive law for purposes of the statute's application. Thus, although the legislature may never declare itself to be interpreting the law, it may in certain circumstances find itself to be the author of a so-called "interpretive" statute. But in no circumstances shall the legislature interpret legislation after the judiciary has already done so. We find that this is in blatant violation of the separation of powers by overzealous public officials because under our system of government, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). The interpretation of the law belongs to the judiciary, not the legislature. With Bourgeois, the supreme court interpreted the law and applied it to a particular case, as it is required to do; the legislature then reinterpreted the law in a manner that has substantively changed the law and restricted a remedy provided by the court.
The judiciary in Louisiana is a co-equal branch of government along with the legislative and the executive branches. See La. Const. art. II, § 1, 2. Professor Symeonides, a distinguished scholar of civil law, and in particular of the civil law of Louisiana, writes that the Louisiana judiciary has from its inception had an important role in the formulation of law and done far more than merely apply statutory provisions. S. Symeonides, "The Louisiana Judge: Judge, Statesman, Politician," LOUISIANA: MICROCOSM OF A MIXED JURISDICTION 89-103 (Vernon Palmer, ed., Carolina Academic Press 1999).[1] Not only does the civil law judge have more freedom when deciding cases because he or she is not bound by the principle of stare decisis, the civil law statutes and codes are usually drafted in more general terms than common-law statutes and thus depend more on judges to render them concrete through judicial interpretation. Id.
The passing of 1999 La. Acts 989 immediately after the supreme court decision in Bourgeois, given the political climate and the obvious pressure from other branches of government, calls to mind a warning from Supreme Court Justice Cardozo:
The great ideals of liberty and equality are preserved against the assaults of opportunism, the expediency of the passing hour, the erosion of small encroachments, the scorn and derision of those who have not patience with general principles, by enshrining them in constitutions....
Benjamin Nathan Cardozo, THE NATURE OF THE JUDICIAL PROCESS, pp. 92-93 (1921). For Justice Cardozo, the judiciary was the body of defenders because of that branch's role in the preservation of liberty and the seeking of justice. Id.
The legislature clearly sought to overrule the Louisiana Supreme Court. By passing 1999 La. Acts 989 in order to *975 abrogate the supreme court's interpretation and application of a long-standing codal provision, the legislature has clearly and blatantly transgressed the doctrine of the separation of powers. This doctrine is violated when one branch assumes a function that more properly is entrusted to another. INS v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (Powell, J., concurring). Micromanagement of the decisions of the courts by the legislative and executive branches violates the Louisiana Constitution. The legislature and the governor's office are not the judicial branch and it is the duty of the courts to make certain that they keep to their proper functions.
NOTES
[1] 1999 La. Acts 989 states:

Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.
[1] As an example, Professor Symeneonides notes that in 1839 the supreme court held that a pre-1825 decision of the court was not repealed by a new legislative provision because the decision was derived from Roman law principles that had "great cogency." Id. (quoting Reynolds v. Swain, 13 La. 193, 198 (1839)).