# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-403

VAD DAOTHEUANG

VERSUS

EL PASO PRODUCTION OIL & GAS CO., ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 97971-F
HONORABLE EDWARD M. LEONARD JR., DISTRICT JUDGE

**********

### ELIZABETH A. PICKETT
### JUDGE
**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED.**

**Gerald C. deLaunay**
**Attorney at Law**
**P. O. Box 53597**
**Lafayette, LA 70505**
**Counsel for Defendant/Appellee:**
    **Omega Natchiq, Inc.**

**Alistair A. Adkinson**
**Attorney at Law**
**4550 N. Blvd., Suite 220**
**Baton Rouge, LA 70806**
**Counsel for Plaintiff/Appellant:**
    **Vad Daotheuang**

**Pickett, J.**

The plaintiff, Vad Daotheuang, appeals a judgment of the trial court granting the defendant's, Omega Natchiq's (Omega), motion for summary judgment and dismissing the plaintiff's suit. We affirm the judgment of the trial court.

**FACTS**

On April 19, 2000, the plaintiff, who was employed by the defendant, was injured in the course and scope of his employment when a gasket on a flow meter on a piece of oil field equipment (described as a "skid") on which the plaintiff was working failed. The skid was being constructed for El Paso Oil & Gas Production Company out of various components, some of which were supplied by Halliburton Energy Services. The components supplied by Halliburton included flow meters and installation kits which contained flange gaskets manufactured by Lydall, Inc. It was one of these gaskets which failed while the system was undergoing hydrostatic testing. When the gasket failed, fluid under approximately 1700 pounds per square inch of pressure was released striking the plaintiff in the head and upper torso knocking him backward into some nearby pipes and causing multiple injuries.

This suit for spoliation of evidence arose when the plaintiff, during the March 2002 deposition of Todd LeBlanc, the then current safety director of Omega, found out that Omega could not locate the gasket. In response to the suit, Omega filed an exception of prescription and a motion for summary judgment. The trial court denied the former and granted the latter. The plaintiff appealed, and the defendant answered the appeal. In its answer to appeal, the defendant seeks damages for frivolous appeal and, in the event this court would reverse the motion for summary judgment,

1

defendants ask that we reconsider its exception of prescription. We affirm the judgment of the trial court and deny damages for frivolous appeal.

## LAW AND DISCUSSION

The law applicable to the case at bar is well settled.

In *Hines v. Riceland Drilling Co.*, 04-503 (La.App. 3 Cir. 9/29/04), 882 So.2d 1287, *writ denied*, 04-2705 (La.1/07/05), 891 So.2d 681, this court recounted the law applicable to the appellate review of summary judgments, stating as follows:

> In *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230-31, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
>
> > Our review of a grant or denial of a motion for summary judgment is de novo. *Schroeder v. Board of Sup'rs of Louisiana State University*, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
> >
> > > The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).

*Hines*, 882 So.2d at 1289-90. Accordingly, we must undertake a de novo review of the summary judgment.

2

*Lafayette Parish Sch. Bd. v. Cormier ex rel. Cormier*, 05-05, pp. 2-3 (La.App. 3 Cir. 5/4/05), 901 So.2d 1197, 1199, *writ denied*, 05-1482 (La. 12/16/05), 917 So.2d 1112.

The facts in this case are not in dispute. A little over one month after the accident, on May 26, 2000, the plaintiff's counsel wrote a letter to Bryan Aucoin, Omega's Safety Director, informing the defendant that he was representing the plaintiff in his workers' compensation claim. The letter went on to say that "*we are also interested in <u>investigating the potential</u> of a third-party claim*" (emphasis ours). In connection with the possibility of a third-party claim, the letter stated (emphasis ours):

> [T]his is our formal request that you provide us with all information and documents relative to the company's investigation of this accident, including *accident reports, diagrams, photographs, sketches, investigative reports, statements, and any and all other <u>documents</u>* regarding this accident in your possession *so that I can evaluate whether a third-party claim can be made.* I specifically need to know from you how this accident happened, what equipment or gaskets failed, and who the manufacturers, installers, and/or repairers of the equipment or gaskets which caused my client's injuries.

At his deposition on April 18, 2001, Mr. Aucoin testified that immediately after the accident he sent someone "to look at the valve and see if we could find the gasket, and that photo [of the gasket] was taken at that time." Mr. Aucoin went on to state that he knew of no subsequent accident reports, after the initial investigation, and that he was unaware of any subsequent photographs. During the deposition he was never asked to produce the gasket, was never asked if he knew its current location, and no request was made that he locate and/or preserve the gasket. Mr. Aucoin left Omega's employ on November 1, 2001. In an affidavit executed in August of 2005, he stated that some photographed and photocopied material concerning the accident was turned over to Omega workers' compensation carrier. He testified that, to the best of his

recollection, up to the time he left Omega, neither the plaintiff nor his attorney requested that he or anyone else at Omega to preserve any evidence related to the accident.

Similarly, the record contains no request from the plaintiff to Omega or any Omega representative imploring them to locate and/or preserve the gasket . In fact no request, from any party, was made until *Halliburton* included a request for the serial number and location of the Lydall gasket in its March 22, 2002 Notice of Deposition of Omega.

In response to Halliburton's notice, Early Romero, Omega's Piping Superintendent, testified on behalf of Omega at the deposition taken on March 27, 2002. He stated that he was about 100 feet away from the plaintiff at the time of the accident. He went on to say that following the accident the gasket involved in the accident was photographed, another gasket was installed, and the skid was completed and shipped. The plaintiff's supervisor, Thongseo Sourinhaphouthone (Soury), also gave a deposition. He remembered that, following the accident, the gasket was several feet from the skid, having been carried along by the water pressure. He stated that he couldn't remember anyone from Omega's safety department asking for the broken gasket, the installation diagram, or the flow meter parts list; however, he believes that he was the one who brought the gasket, the accident report and the paper chart which was recording the hydrostatic test to the safety office.

In *Guillory v. Dillard's Department Store, Inc.*, 00-190, pp. 3-6 (La.App. 3 Cir. 10/11/00), 777 So.2d 1, 3-4 (footnotes omitted), this court discussed the tort of spoliation of evidence:

> Recognizing a claim in tort for spoliation of evidence presents a relatively new concept in Louisiana jurisprudence and has been the

subject of recent consideration in our courts. *See Pham v. Contico Intern., Inc.*, 99-945 (La.App. 5 Cir. 3/22/00); 759 So.2d 880; *Bethea v. Modern Biomedical Services, Inc.*, 97-332 (La.App 3 Cir. 11/19/97); 704 So.2d 1227, *writ denied*, 97-3169 (La.2/13/98); 709 So.2d 760; *Carter v. Exide Corp.*, 27,358 (La.App. 2 Cir. 9/29/95); 661 So.2d 698. *See also* MARIA A. LOSAVIO, SYNTHESIS OF LOUISIANA LAW ON SPOLIATION OF EVIDENCE-COMPARED TO THE REST OF THE COUNTRY, DID WE HANDLE IT CORRECTLY?, 58 La.L.Rev. 837 (1998). Prior to being discussed as a tort, the term "spoliation of evidence" appeared in our jurisprudence along with the evidentiary theory of adverse presumption. *See e.g. Rodriguez v. Northwestern National Ins. Co.*, 358 So.2d 1237 (La.1978); *Babineaux v. Black*, 396 So.2d 584 (La.App. 3 Cir.1981); *Miller v. Montgomery Ward & Co.*, 317 So.2d 278 (La.App. 1 Cir.1975). In those cases where it was proven that a party had destroyed, altered, concealed, or failed to produce evidence relevant to the pending civil claim, and they could not reasonably explain their actions, Louisiana courts have sanctioned the party by instructing the jury of the adverse presumption that had the evidence in question been presented, it would be unfavorable to the party spoliator. *See Rodriguez*, 358 So.2d 1237; *Gordon v. State Farm Ins. Co.*, 97-270 (La.App. 5 Cir. 9/30/97); 700 So.2d 1117; *Salone v. Jefferson Parish Dept. of Water*, 94-212 (La.App. 5 Cir. 10/12/94); 645 So.2d 747; *Randolph v. General Motors Corp.*, 93-1983 (La.App. 1 Cir. 11/10/94); 646 So.2d 1019, *writ denied*, 95-194 (La.3/17/95); 651 So.2d 276; *McElroy v. Allstate Ins. Co.*, 420 So.2d 214 (La.App. 4 Cir.), *writ denied*, 422 So.2d 165 (La.1982). Although the adverse presumption rule is still viable, the present inquiry is whether a plaintiff can seek damages in tort, from a person who allegedly destroys or conceals evidence material to a potential or pending lawsuit and, if so, under what circumstances that person will be held liable.

First, we note that our jurisprudence has recognized a person's right to assert a similar cause of action for the tort of impairment of a civil claim. *See e.g. Williams v. General Motors Corp.*, 607 So.2d 695 (La.App. 4 Cir.1992); *Duhe v. Delta Air Lines, Inc.*, 635 F.Supp. 1414 (E.D.La.1986); *Fischer v. Travelers Ins. Co.*, 429 So.2d 538 (La.App. 4 Cir.1983). *See also Morgan v. ABC Manufacturer*, 93-701 (La.App. 5 Cir. 3/16/94); 637 So.2d 1076. Although the claims may be separate, both causes of action are premised on the right of a plaintiff to be free from interference in pursuing and/or proving his or her lawsuit. *See Kammerer v. Sewerage and Water Board of New Orleans*, 633 So.2d 1357 (La.App. 4 Cir. 3/15/94) (Waltzer, J., concurring opinion), *writ denied*, 639 So.2d 1163 (La. 7/1/94); *Fischer*, 429 So.2d 538. In some cases, when a plaintiff claims that the ability to institute or prove a civil claim has been impaired due to the negligent or intentional spoliation of evidence by another, courts have addressed the causes of action for impairment of a civil claim and spoliation of evidence as one. *See e.g. Bethea*, 97-332; 704 So.2d 1227; *Carter*, 27,358; 661 So.2d 698. Thus,

we believe that it is of little importance here, to determine an exact title to label plaintiff's claim for damages resulting from the acts alleged; for when a plaintiff alleges sufficient facts which indicate that he or she has suffered damages caused by another's fault, that plaintiff has asserted a claim actionable under Louisiana tort law. *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La.1989); *Bethea*, 97-332; 704 So.2d 1227. *See also* La.Civ.Code art. 2315 *et seq.*

Therefore, we turn to the instant matter in order to determine whether there is a genuine issue of material fact as to the plaintiff's claim which would preclude summary judgment. The plaintiff alleges that pursuant to La.Civ.Code art. 2315, a duty was imposed on Dillard's to preserve the keys on which Ms. Guillory allegedly slipped and fell. She alleges that the duty was in place from the time she brought the keys to a Dillard's employee and filed an accident report. Therefore, she argues Dillard's failure to maintain custody of the keys, either through negligent or intentional conduct, has caused her damage by hindering her ability to prove her claim for the slip-and-fall. In her appellate brief, the plaintiff alleges that this court in *Bethea*, recognized that such a broad duty exists under Article 2315 and that the case supports the maintenance of this action.

Although the plaintiff argues that the discussion contained in *Bethea* requires reversal of the summary judgment, the breadth or specificity that must be alleged to maintain a cause of action in spoliation of evidence is not at issue in this case as it was in *Bethea*, thus, we find the previous case inapplicable. Further, the standard for determining whether a party has alleged a cause of action in his or her petition is different than that required in determining whether or not a genuine issue of material fact exists as to that cause of action in order to preclude the granting of summary judgment. It is well-settled that whether a duty exists is a question of law. "The inquiry is whether the plaintiff has any law statutory, jurisprudential, or arising from general principles of fault-to support his claim." *Hardy v. Bowie*, 98-2821, p. 12; (La.9/8/99); 744 So.2d 606, 614. *See Faucheaux v. Terrebonne Consl. Gov.*, 615 So.2d 289 (La.1993). Such a determination shall be made on a case-by-case basis according to the facts particular to that claim. *Id.*

The court then went on to find "that under the particular facts of this case, the plaintiff

has failed to offer any genuine issue of material fact to support her claim that Dillard's

either intentionally or negligently spoliated evidence." *Id.* at 4.

Later, in *McCool v. Beauregard Memorial Hospital*, 01-1670, p. 2 (La.App. 3

Cir. 4/3/02), 814 So.2d 116, 118, this court, relying on *Guillory*, affirmed "the right

6

of an individual to institute a tort action against someone who has impaired the party's ability to institute or prove a civil claim due to negligent or intentional spoliation of evidence." There is absolutely no evidence in the record to support even an allegation that Omega intentionally destroyed or disposed of the gasket. Therefore, if the plaintiff was to succeed in his claim for spoliation, it would have to be under the theory of negligence. "In order to establish negligence, the appellant must first establish that the [defendant] had a duty as a matter of law to preserve the evidence and that there was a breach of that duty." *McCool*, 814 So.2d at 119.

The defendant, Omega, is the plaintiff's former employer. Its liability was limited to workers' compensation benefits. In the tort suit in which the gasket was to be introduced, the plaintiff was seeking damages from Halliburton and/or Lydell. Omega stood to gain nothing by the disappearance of the gasket. The gasket was only important in the plaintiff's tort claims. The record establishes that the plaintiff sought "accident reports, diagrams, photographs, sketches, investigative reports, statements, and any and all other documents regarding [his] accident." However, for the two years between the accident and Halliburton's taking of Omega's deposition (when it came to light the gasket was missing), the plaintiff never asked Omega to produce or safeguard the gasket. Furthermore, the existence of the gasket had nothing to do with the plaintiff's claim for workers' compensation benefits. Considering all the evidence, even the affidavits the defendant sought to have excluded, we find no duty on the part of Omega to preserve the gasket.

Accordingly, because we find the plaintiff failed to prove that the defendant acted intentionally or in a negligent manner by failing to preserve the gasket, we find the summary judgment granted by the trial court to be appropriate.

As to the defendant's claim for damages for the taking of a frivolous appeal, it is well settled that pursuant to La.Code Civ.P. art. 2164, frivolous appeal damages are allowed only when it is obvious that the appellant took the appeal solely for the purpose of delay or that counsel is not sincere in the view of the law he advocates. Appeals are always favored and the slightest justification for an appeal precludes such an award. *Hebert v. Broussard*, 04-485 (La.App. 3 Cir. 11/10/04), 886 So.2d 666. We find the appellant to be sincere in the view of the law he advocates and refuse to award damages for frivolous appeal.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed; damages for frivolous appeal are denied; and all costs of this appeal are cast against the appellant, Vad Daotheuang.

**AFFIRMED.**