716 So.2d 355 (1998)
Robert Andrew BOURGEOIS, et al.
v.
A.P. GREEN INDUSTRIES, INC., et al.
No. 97-C-3188.
Supreme Court of Louisiana.
July 8, 1998.
Rehearing Denied September 4, 1998.
*356 Frank Joseph Swarr, Mickey P. Landry, LeBlanc, Maples & Waddell, New Orleans; Robert G. Creely, Jacob John Amato, Jr., Amato & Creely, Gretna, for Applicant.
Madeleine Fischer, Leon Gary, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans; Thomas Gregor Milazzo, LeBlanc, Miranda & Delaup, Metairie; Edward Joseph Castaing, Jr., Crull, Castaing & Lilly, New Orleans; Edward B. McDonough, Jr., Robert Edgar Caraway, III, Laura Lucille Spadafora, Plauche, Maselli & Landry, New Orleans; Gary Allen Lee, Robert E. Peyton, Christovich & Kearney, New Orleans; Samuel Milton Rosamond, III, Fleming & Rosamond, Metairie; J. Michael Johnson, Galloway, Johnson, Tompkins & Burr, New Orleans; Stephen Nolan Elliott, Bernard, Cassisa & Elliott, Metairie; Lynn M. Luker, Tyson B. Stofstahl, Rebecca A. Bush, Lisa Newman Sibal, Rodi William Culotta, Adams & Reese, New Orleans; Eric Shuman, McGlinchey Stafford, New Orleans; Glen Lyle Maximilian Swetman, Troy Nathan Bell, David Edmund Redmann, Jr., Thomas W. Tyner, Aultman, Tyner, McNeese & Ruffin, New Orleans; C. William Bradley, Jr., Dwight C. Paulsen, III, Michael Stephen Sepcich, Lemle & Kelleher, New Orleans; Kaye N. Courington, Duncan, Courington, New Orleans; Michael Thomas Cali, Frilot, Partridge, Kohnke & Clements, New Orleans; Glenn Brozman Adams, Edwin A. Ellinghausen, III, Robert Sartain Emmett, Porteous, Hainkel, Johnson & Sarpy, New Orleans; Rikard L. Bridges, Geoffrey Powell Snodgrass, Christovich & Kearney, New Orleans; Gary Allen Lee, Richard Marshall Perles, Lee, Futrell & Perles, New Orleans; Susan B. Kohn, George Jeffrey Rizzo, Simmon, Peragine, Smith & Redfearn, New Orleans; Forrest Ren Wilkes, John D. Cosmich, Cynthia L. Tolbert, Forman, Perry, Watkins & Krutz, Jackson, MS; Gordon Peter Wilson, Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans; Willian L. Crull, III, Jonathan Marc Herman, New Orleans, for Respondent.
Joseph L. McReynolds, New Orleans, for Center for Claims Resolution, Amicus Curiae.
Floyd J. Falcon, Jr., Baton Rouge, for Louisiana AFL-CIO, Amicus Curiae.
Lynn M. Luker, New Orleans, Lisa Newman Sibal, for Chemical Manufacturers Association, Amicus Curiae.
Ernest Lloyd Johnson, Baton Rouge, for NAACP, Amicus Curiae.
MARCUS, Justice.[*]
Plaintiffs, current and past employees of Avondale Shipyards, initiated this suit on behalf of themselves and a class of all persons ever employed at Avondale Industries, Inc. who allegedly were exposed to asbestoscontaining products but who have not already filed suit for an asbestos-related injury or disease.[1] In their petition, plaintiffs allege that they were exposed to airborne asbestos fibers while working at Avondale. As a result of that exposure, plaintiffs claim that they are now in need of regular medical examinations to facilitate the early detection and treatment of possible latent diseases.[2] *357 Named as defendants in the suit are several manufacturers, sellers and/or suppliers of asbestos and asbestos containing insulation products used at Avondale, as well as various executive officers of Avondale Industries, Inc. The insurers of these defendants have also been named. The principal relief sought by plaintiffs is the establishment of a judicially administered fund to cover the costs of periodic medical monitoring.[3]
In response to plaintiffs' petition, defendants filed a variety of dilatory and peremptory exceptions including an exception of no cause of action for medical monitoring expenses. The trial judge sustained defendants' exception, finding that plaintiffs, who did not allege any present physical ailments attributable to asbestos exposure, failed to allege damage so as to have stated a cause of action under Louisiana Civil Code article 2315. The court of appeal affirmed the judgment for the reasons assigned by the trial judge.[4] As a result of this ruling, plaintiffs may not institute and sustain a claim against defendants unless and until they manifest an exposure-related illness or disease. In the interim, plaintiffs who seek regular or periodic medical examinations for the express purpose of detecting adverse exposure-related physical conditions must personally bear the expense of that evaluation. Upon plaintiffs' application, we granted certiorari to review the correctness of that decision.[5]
The narrow issue presented for our review is whether asymptomatic plaintiffs, who have had significant occupational exposure to asbestos and must now bear the expense of periodic medical examinations to monitor the effects of that exposure, have suffered "damage" under Louisiana Civil Code article 2315.[6]
Louisiana Civil Code article 2315 imposes delictual liability on a person whose fault causes "damage" to another. Although the Civil Code provides no definition of the term, it is well established that, without damage, there can be no cause of action. Ferdinand F. Stone, Tort Doctrine § 12, at 22 (12 Louisiana Civil Law Treatise 1977). This is because, without it, the law of tort has nothing to repair. Id. In order for damage to be actionable, it must be imposed on a legally protected interest of the plaintiff.[7]Id. While *358 a "mere invasion" of an interest is insufficient to support a cause of action, an invasion that brings about some degree of loss or detriment and is capable of repair is the type of consequence envisioned under Article 2315. Id.
Under the guidance of these general principles, Louisiana courts have recognized several broad categories of damage, including actual, physical damage (or patrimonial damage)[8], moral damage (or extra-patrimonial damage)[9], and future damage.[10] Medical expenses have been recognized routinely as compensable items within the categories of both patrimonial damage and future damage. When awarded in personal injury suits, medical expenses ordinarily can include the cost not only of therapeutic treatment but also of diagnostic testing and long-term monitoring. Absent a corresponding physical injury, however, recovery of such expenses traditionally has not been awarded. This trend can be explained, in part, by the relative paucity of claims for this type of relief.[11] A more likely explanation, however, is the fear that, without an identifiable physical injury upon which to moor a claim for medical expenses, an atmosphere of unlimited and unpredictable liability will ensue. For the reasons discussed below, this fear, although understandable, is unwarranted in the medical monitoring context.
An action for medical monitoring seeks to recover the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm.[12]Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 821 (1993). The theory behind such recovery is simple. When a plaintiff is exposed to a hazardous substance, like asbestos, it is often sound medical practice to undergo periodic examinations to ascertain whether the plaintiff has contracted a disease. Cook v. Rockwell Int'l Corp., 755 F.Supp. 1468, 1477 (D.Colo.1991). This is because asbestos, like other modern environmental toxins, affects the body in ways that often do not become manifest for many years. Hansen v. Mountain Fuel Supply Co., 858 P.2d 970, 977 (Utah 1993). Unlike a car crash, asbestos exposure is an accident almost always without impact. Nevertheless, it is still an accident that can have consequences every bit as real as those sustained in a head-on collision. *359 In fact, it is precisely because asbestos can have such deadly consequences that plaintiffs, regardless of whether or not they are currently suffering from a disease, are often encouraged to submit to regular diagnostic testing.
No one disputes that an individual has a legally protected interest in avoiding physical injury. Thus, when a defendant's tortious act causes someone bodily harm, be it a broken arm or asbestosis, the law clearly affords recovery. Furthermore, no one disputes that a physically injured plaintiff has a legally protected interest in avoiding economic harm in the form of costly medical testing. Thus, when a defendant's tortious act causes someone bodily harm and that person is made to incur medical expenses as a result, the law clearly affords recovery for these expenses. Hansen, 858 P.2d at 976; Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287, 311 (1987). The reason these expenses are recoverable, however, is because defendant's fault caused plaintiff to incur them. This reasoning applies as persuasively to plaintiffs who have suffered physical injury as it does to those who have not. In either case, a plaintiff has suffered legal detriment in the form of costly medical bills. Hansen, 858 P.2d at 977. Because a plaintiff's liability for the bills will be the same regardless of whether he or she manifests a physical injury, it makes little legal sense to compensate one plaintiff and not the other. Hence, as long as a plaintiff can demonstrate a need for medical testing arising out of a defendant's tortious act, it logically follows that the defendant should make the plaintiff whole by paying the cost of these examinations. Friends for All Children, Inc. v. Lockheed Aircraft Corp., 746 F.2d 816, 826 (D.C.Cir.1984).
In Friends for All Children, the D.C. Circuit court posed the following hypothetical situation to illustrate this theory.
Jones is knocked down by a motorbike which Smith is riding through a red light. Jones lands on his head with some force. Understandably shaken, Jones enters a hospital where doctors recommend that he undergo a battery of tests to determine whether he has suffered any internal head injuries. The tests prove negative, but Jones sues Smith solely for what turns out to be the substantial cost of the diagnostic examinations.
Id. at 825. In this example, Jones, through the fault of Smith, incurred the need for specific medical services, the cost of which is neither inconsequential nor of a kind which one generally expects to incur as part of the wear and tear of daily life. Under these circumstances, Jones reasonably ought to be able to recover the cost of the various medically-recommended diagnostic examinations, even if such tests reveal no physical injury. Id.
Friends for All Children was one of the first cases to recognize medical monitoring expenses as an independent injury or damage. In that case, suit was instituted on behalf of 149 Vietnamese orphans who survived a plane crash. As a result of cabin decompression and the impact of the crash, plaintiffs alleged that the orphans suffered from a neurological development disorder. Despite the fact that the orphans displayed no physical symptoms of the disorder, the courts recognized that their increased risk of brain damage as a result of the crash created a need for diagnostic examinations. Consequently, the court of appeal affirmed the district court's establishment of a fund from which the costs of diagnostic testing for the orphans could be drawn.
In the short lineage of cases which have addressed the issue of medical monitoring, Friends for All Children holds a somewhat anomalous position. Unlike most cases in this field, Friends for All Children did not involve repeated or significant exposure to a toxic substance. Instead, the orphans' need for medical testing arose out of a traumatic physical impact. Moreover, due to the nature of the physical injuries for which the orphans were at risk, the court's remedy was limited to payment of the cost of short-term diagnostic testing rather than prolonged, periodic monitoring.
Despite these differences, Friends for All Children has provided the dominant framework within which a majority of state supreme courts faced with the issue have since authorized recovery for medical monitoring *360 in the absence of physical injury. See, e.g., Redland Soccer Club, Inc. v. Deptartment of the Army & Dep't of Defense, 548 Pa. 178, 696 A.2d 137, 142 (1997)(recognizing a claim for a medical monitoring trust fund for plaintiffs who played soccer on a site previously used as a toxic waste dump); Potter, 25 Cal.Rptr.2d 550, 863 P.2d at 823 (holding that landowners' reasonably certain need for medical monitoring as a result of their exposure to toxic wastes from a neighboring landfill is an item of damage for which compensation may be allowed); Hansen, 858 P.2d at 978 (Utah 1993)(authorizing the recovery of medical monitoring damages by workers who were exposed to asbestos while performing renovation work for defendant); Ayers, 525 A.2d at 312 (N.J.1987)(entitling plaintiffs to compensation for the cost of presymptom medical surveillance in an action based on exposure to well water contaminated by toxic pollutants from defendant's landfill).[13] While recognizing that the cost of medical monitoring can amount to an injury in and of itself, these courts have consistently imposed limitations on the recovery allowed. See, e.g., Redland, 696 A.2d at 145-46 (setting forth seven elements a plaintiff must prove in order to prevail on a claim for medical monitoring); Potter, 25 Cal.Rptr.2d 550, 863 P.2d at 824-25 (providing five factors relevant to a determination of whether the need for future monitoring is a reasonably certain consequence of a plaintiff's toxic exposure and whether the recommended monitoring is reasonable). In this way, courts have safeguarded the claim from abuse while simultaneously deterring the irresponsible handling of toxic substances by defendants and encouraging plaintiffs to detect and treat their injuries as soon as possible. Paoli, 916 F.2d at 852.
After consideration of the law in both Louisiana and other states, we are persuaded that the reasonable cost of medical monitoring is a compensable item of damage under Civil Code article 2315, provided that a plaintiff satisfies the following criteria:[14]

(1) Significant exposure to a proven hazardous substance.
Exposure, as used in this factor, means ingestion, inhalation, injection or absorption into the body by some other means. Hansen, 858 P.2d at 979. Such exposure must be significant in intensity and/or duration, meaning that a plaintiff must prove exposure greater than normal background levels. Redland, 696 A.2d at 145. In addition, the substance to which a plaintiff is exposed must have been proven hazardous to human health.

(2) As a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.
No particular level of quantification is necessary to satisfy the requirement of increased risk. Hansen, 858 P.2d at 979. The injury in question is plaintiff's demonstrated need for medical monitoring and the costs which correspond to such care. Hence, plaintiff need not prove a certain probability of actually suffering physical harm because of his or her exposure. It is sufficient that plaintiff show a significant degree of increased risk. Id. In addition, plaintiff must *361 prove that the illness, the risk of which has been increased by exposure, is both serious and latent. By this we mean an illness that is dormant and that, in its ordinary course, may result in significant impairment or death. Id.

(3) Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease.
This factor serves to ensure that plaintiff's need for medical monitoring is a result of his or her exposure to the particular hazardous substance at issue. It further serves to ensure that exposures suffered by the public at large, which increase the entire population's risk of disease, do not form the basis of medical monitoring claims.

(4) A monitoring procedure exists that makes the early detection of the disease possible.
If no such test exists, then periodic monitoring is of no assistance and the cost of such monitoring is not recoverable. If a test is later developed that will detect the disease, plaintiff would retain the right to demonstrate the effectiveness of the test and be compensated for utilizing it, assuming plaintiff can satisfy the other elements of the damage proof. Hansen, 858 P.2d at 979, n. 12.

(5) The monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles.
Plaintiff must show that administration of the diagnostic test is medically advisable for him or her specifically. Hansen, 858 P.2d at 980. This factor conforms with the fact that the injury being remedied is the plaintiff's incurrence of medical monitoring expenses. Absent the advisability of monitoring for a specific individual, the associated costs should not be recoverable. Id. In addition, plaintiff must show that the testing is of a type that a reasonable physician in the area of specialty would order for a similarly situated patient. Id. This dual requirement prevents recovery for costs of treatment not generally accepted by the medical community.

(6) The prescribed monitoring regime is different from that normally recommended in the absence of exposure.
Plaintiff must demonstrate that his or her increased risk of disease warrants medical monitoring beyond that which an individual should pursue as a matter of general good sense and foresight. Thus, there can be no recovery for preventative medical care and checkups to which members of the public at large should prudently submit. Potter, 25 Cal.Rptr.2d 550, 863 P.2d at 825.

(7) There is some demonstrated clinical value in the early detection and diagnosis of the disease.
In order to fully establish medical monitoring expenses as a cognizable damage under Article 2315, plaintiff must show that there is some medical benefit to be gained through early detection of the disease. In other words, plaintiff must show that an existing treatment, administered before the illness becomes apparent to a layperson, is effective in curing or ameliorating the consequences of the illness. Hansen, 858 P.2d at 979-80. Unless such a treatment is available, then there is nothing for plaintiff to gain from a hastened diagnosis and the cost of such testing is not recoverable.
Finally, to ensure that only meritorious claims are compensated, plaintiff's recovery of medical monitoring costs must be both reasonable and limited in duration to the maximum latency period (if known) of the diseases for which there is an increased risk. Id., 858 P.2d at 981.
A plaintiff who satisfies the abovelisted factors has proven his or her need for medical monitoring. For the reasons discussed in this opinion, we hold that a plaintiff who can demonstrate a need for medical monitoring has suffered damage in the form of the costs required to pay for this care.[15] *362 This damage is compensable when the plaintiff establishes liability under traditional tort theories of recovery.[16]
Contrary to the fears of defendants and amici curiae, we are confident that our holding will not create an atmosphere of unlimited and unpredictable liability. The seven factors set forth in this opinion provide substantial evidentiary burdens for a plaintiff seeking recovery of medical monitoring expenses. Given this safeguard, we find no justifiable reason to deny plaintiffs a cause of action under Civil Code article 2315.
In view of our holding in this case, we consider it appropriate to remand the case to the district court to permit plaintiffs the opportunity to amend their petition to allege facts sufficient to state a cause of action.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The case is remanded to the district court to permit plaintiffs the opportunity to amend their petition within thirty (30) days from the finality of this judgment to state a cause of action in accordance with this opinion. If plaintiffs fail to comply with this order to amend, the action is dismissed.
LEMMON, J., and CALOGERO, C.J., concur and assign reasons.
LEMMON, Justice, concurring.
Under a duty-risk analysis, the defendants had a duty not to expose the plaintiffs to products that were unreasonably dangerous because of their asbestos content. For purposes of the exception of no cause of action, the defendants breached that duty, and the conduct constituting a breach of duty was a cause-in-fact of damages sustained by the plaintiffs.[1]
The fourth element of the duty-risk analysis is, at least in this case, largely a policy questionwhether the duty imposed on the defendants not to expose the plaintiffs to these substances encompasses the risk that the plaintiffs may be required to undergo medical monitoring to facilitate early detection and possibly successful treatment of a disease that medical science at this stage cannot accurately predict will ensue. Because of the devastating consequences which often result from significant exposure to asbestos and the long-term latency of the serious diseases caused by asbestos, the reasonable cost of necessary medical monitoring should fall within the scope of liability for the defendant's breach of duty.[2]
CALOGERO, Chief Justice, concurring.
I agree with the majority opinion insofar as it reverses the court of appeal judgment and concludes that a claim for medical monitoring is a valid cause of action under Louisiana law. I write separately, however, to present my views as to what elements a plaintiff should have to prove in order to recover in a claim for medical monitoring.
The majority opinion sets forth seven elements that a plaintiff must satisfy in order to prevail in a claim for the reasonable costs of medical monitoring. I agree with the majority opinion with regard to the first six stated elements. However, I take issue with the seventh element, which reads: "There is some demonstrated clinical value in the early detection and diagnosis of the disease." Slip op. at p. 362. In my view, if a plaintiff has satisfied the first six stated elements, he is entitled to recover medical monitoring expenses, notwithstanding the fact that the early detection of the disease would not cure or ameliorate the consequences of the illness.
*363 I disagree with the majority's conclusion that "[u]nless such treatment is available, then there is nothing for plaintiff to gain for a hastened diagnosis...." Slip op. at p. 362. One thing that such a plaintiff might gain is certainty as to his fate, whatever it may be. If a plaintiff has been placed at an increased risk for a latent disease through exposure to a hazardous substance, absent medical monitoring, he must live each day with the uncertainty of whether the disease is present in his body. If, however, he is able to take advantage of medical monitoring and the monitoring detects no evidence of the disease, then, at least for the time being, the plaintiff can receive the comfort of peace of mind. Moreover, even if medical monitoring did detect evidence of an irreversible and untreatable disease, the plaintiff might still achieve some peace of mind through this knowledge by getting his financial affairs in order, making lifestyle changes, and, even perhaps, making peace with estranged loved ones or with his religion. Certainly, these options should be available to the innocent plaintiff who finds himself at an increased risk for a serious latent disease through no fault of his own.
In addition, as the Supreme Court of Pennsylvania recognized in expressly rejecting a similar restriction that a plaintiff prove the existence of a treatment that would make early detection beneficial, such a restriction "would unfairly prevent a plaintiff from taking advantage of advances in medical science." Redland Soccer Club, Inc. v. Department of the Army, 548 Pa. 178, 696 A.2d 137, 146 n. 8 (1997). In my view, if no treatment is available at the time that the plaintiff seeks medical monitoring to discover the existence of the disease in his body, the burden should not be placed on the plaintiff to keep abreast of advances in medical science in order to recover the cost of medical monitoring.
For the reasons given above, I respectfully concur.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Plaintiffs' class has not been certified. Because the issue of certification is not before us, we do not address it in this opinion.
[2] Although the alleged class contains some members who have already been diagnosed with asbestos-related diseases, plaintiffs' petition does not seek recovery for specific illnesses caused by their exposure. In his reasons for judgment, the trial judge explicitly limited the claims under consideration to those of plaintiffs who have not been diagnosed with an asbestos related injury or disease, noting that it ultimately may be proper to exclude physically injured plaintiffs from the class. Consequently, for the purposes of this opinion, we will focus on plaintiffs' claims for medical monitoring expenses only as they relate to individuals seeking a postexposure, presymptom remedy. Defendants do not dispute the viability of a claim for future medical monitoring expenses by those plaintiffs already diagnosed with an exposure related disease.
[3] A claim for a medical monitoring fund is significantly different from a claim for a lump-sum award of damages. A trust fund compensates the plaintiff for only the monitoring costs actually incurred. In contrast, a lump-sum award of damages is a monetary award that the plaintiff can spend as he or she sees fit. Because the plaintiffs in this case are seeking the establishment of a judicially supervised fund to administer their medical surveillance payments, we offer no opinion concerning whether lump-sum damages are recoverable under Louisiana law. For a thorough discussion addressing the potential problems of lump-sum recovery, see Metro-North Commuter R.R. Co. v. Buckley, 521 U.S. 424, 117 S.Ct. 2113, 2122-24, 138 L.Ed.2d 560 (1997)(holding, in part, that, under the FELA, a railroad worker who had suffered exposure to asbestos but who did not have any present physical disease could not recover lump-sum medical monitoring costs as a separate economic injury).
[4] 97-648 (La.App. 5 Cir. 11/25/97), 703 So.2d 786.
[5] 97-3188 (La.3/20/98), 715 So.2d 1194.
[6] La. Civ.Code art. 2315 provides in part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
In the instant case, plaintiffs advance theories of recovery in negligence (Civ.Code art. 2316), garde (Civ.Code art. 2317), strict products liability and fraud (intentional misrepresentation), all of which constitute "fault" under Article 2315. To state a cause of action under any of these theories, plaintiffs must allege the essential elements of each, including "damage." The sole issue raised by defendants in their exception to plaintiffs' above-listed claims is whether medical monitoring expenses are a cognizable damage under Article 2315. Consequently, the scope of our review is limited to that issue alone. We express no view on the sufficiency of plaintiffs' petition with regard to the other elements of their claims.
[7] Early tort law focused its attention on protection of the interest a plaintiff has in his or her person or, more accurately, physical person. Stone, § 125, at 175. In his treatise on Louisiana tort law, Professor Stone traces the evolution of this protected interest. He concludes that, in addition to plaintiff's body, the "interest in person" may now include a plaintiff's emotions, liberty, reputation, privacy, family relations and economic livelihood. Id. at 175-76. It is for this reason, he notes, that the interest protected under Louisiana law may be more properly characterized as one of "personality" rather than of "person." Id. at 176.
[8] Professor Stone describes the first category of damage, "actual, physical damage," as including items such as medical expenses, out-of-pocket expenses, lost earnings, property damage and physical damage. Stone, § 14, at 23.
[9] "Moral damage" is described by Stone as including things such as humiliation, embarrassment, loss of enjoyment or companionship, pain and suffering, and shock. Stone, § 14, at 23.
[10] "Future damage" includes, among other things, continuing medical expenses, fear of future harm, and loss of future profits. These items of damage, unlike those in the other two categories, are inherently speculative because they have not yet occurred and may never occur. Stone, § 14, at 23-24.
[11] Indeed, absent physical injury, a plaintiff will not have the need for therapeutic treatment. With regard to diagnostic testing and medical monitoring, it has only been in the past decade or so, as awareness of the potential health hazards of toxic exposure has grown, that plaintiffs have begun seeking, on a regular basis, recovery of the significant cost of these procedures.
[12] To prevent confusion, we note that a claim for recovery of medical monitoring expenses is separate and distinct from a claim for the enhanced risk of contracting a serious illness due to exposure. The enhanced risk claim seeks a damage award, not because of any expenditure of funds, but because a plaintiff contends that the unquantified injury to his or her health and life expectancy should be presently compensable, even though no evidence of disease is manifest. Mauro v. Raymark Indus., Inc., 116 N.J. 126, 561 A.2d 257, 262-63 (1989). While this type of claim is inherently speculative, forcing courts to anticipate the probability of future illness or disease, a medical monitoring claim is much less so, the only issue for the factfinder being whether or not the plaintiff needs medical surveillance given the circumstances of his or her exposure. In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 851 (3rd Cir.1990). The risk of speculation in a medical monitoring claim is further reduced because recovery is based upon the specific dollar costs of reasonable and necessary periodic examinations. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 825 (1993).
[13] Federal courts, interpreting state law, have come to mixed conclusions on the matter. See, e.g., Paoli, 916 F.2d at 850 (recognizing, under Pennsylvania law, that the injury in a medical monitoring claim is the cost of the medical care that will detect an injury); Cook, 755 F.Supp. at 1477 (D.Colo.1991)(predicting that the Colorado Supreme Court would probably recognize a tort claim for medical monitoring, provided that the need for monitoring is caused by a defendant's tortious acts or omissions); Johnson v. Armstrong Cork Co., 645 F.Supp. 764, 769 (W.D.La.1986)(implicitly interpreting Louisiana law in a diversity case to hold that medical expenses, past and future, which plaintiff incurred to monitor development of possible cancerous condition would be a recoverable element of damages in asbestos case). But see, e.g., Ball v. Joy Techs., Inc., 958 F.2d 36, 39 (4th Cir.1991)(holding that, under the laws of Virginia and West Virginia, recovery of medical monitoring expenses is only available where a plaintiff has sustained a physical injury that was proximately caused by the defendant); Werlein v. United States, 746 F.Supp. 887, 904 (D.Minn.1990)(recognizing plaintiffs' entitlement to medical monitoring costs under common law, provided plaintiffs can prove present injuries that increase the risk of future harm).
[14] The following factors must, of course, be proven by competent expert testimony. Potter, 25 Cal.Rptr.2d 550, 863 P.2d at 825.
[15] Recognition of a plaintiff's need for medical monitoring does not create a new tort. Potter, 25 Cal.Rptr.2d 550, 863 P.2d at 823.
[16] Plaintiffs in the instant case have sought compensation in the form of a judicially administered fund. It is beyond the scope of this opinion to set forth guidelines for the trial court in establishing and administering such a fund. We are confident that such procedures can be developed by the lower courts on a case-by-case basis.
[1] These elements of the analysis are questions of fact for trial by the trier of fact.
[2] As the majority points out, the medical necessity for the monitoring, the reasonableness of the cost, the likelihood that early detection will enhance the probability of successful treatment, and other such factors must be proved at trial.