Freddie MOLDEN, et al.

v.

GEORGIA GULF CORPORATION

No. CIV.A. 02–01–FJP–CN.

United States District Court, M.D. Louisiana.

Nov. 14, 2006.

Gladstone N. Jones, III, Jones, Verras & Freiberg, LLC, New Orleans, LA, Vincent J. Desalvo, Law Offices of Vincent J. Desalvo, Stephen Todd Hoover, Hoover Law Firm, Baton Rouge, LA, for Freddie Molden.

F. Barry Marionneaux, F. Charles Marionneaux, Marionneaux & Marionneaux (APLC), Plaquemine, LA, Luis Arturo Leitzelar, Jones, Walker, Baton Rouge, LA, for Georgia Gulf Corporation.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

This matter is before the Court on Defendant's motion for summary judgment.[1] Plaintiffs filed a Joint Memorandum in opposition to the motion.[2] For the reasons which follow, the motion of Georgia Gulf Corporation ("Georgia Gulf") is GRANTED and Plaintiffs' claims are dismissed with prejudice.[3]

### I. Background Facts

On May 11, 2001, a fire occurred in the Phenol Plant of the Georgia Gulf chemical manufacturing facility in Iberville Parish. According to Georgia Gulf, a heavy ends boiler tripped and vapor surrounded the heavy ends tower. When the boiler was restarted, the vapors and liquid ignited, causing the fire. The fire was brought under control within 45 minutes. Dark smoke, which was visible until the fire was extinguished, drifted from the plant in a northerly direction and was visible from the areas surrounding the Georgia Gulf facility. A shelter in place order was issued by telephone to nearby residents and several roads around the facility were closed to traffic. River traffic was also halted, the nearby ferry temporarily ceased operation, and the emergency sirens in the area were sounded.

During the fire, approximately 2,082.2 gallons of phenolic tar[4] was either consumed in the fire or volatilized into the atmosphere. Cumene may be moderately toxic by inhalation. Phenol is found in common household products and can be extremely hazardous. While phenol has an odor detection threshold greater than its permissible exposure limit, inhalation can cause wheezing, coughing, shortness of breath, or burning in the mouth, throat or chest.

The record reveals that no one within the Georgia Gulf facility reported any physical injury secondary to the fire or smoke. The smell of phenol, however, did extend beyond the fence line and material was released into the atmosphere. Numerous nearby residents documented complaints of odor and adverse physical complaints.[5]

After the fire, nine separate lawsuits were filed.[6] The lawsuits were originally

---

1. Rec. Doc. No. 175.

2. Rec. Doc. No. 183.

3. The parties disagree as to which parties this ruling is binding. Generally an individual's claim cannot be dismissed without notice and an opportunity to be heard. *Nat'l Gypsum Co. v. NGC Settlement Trust*, 208 F.3d 498, 510 (5th Cir.2000). This Court may decide a defendant's motion for summary judgment in a putative class action case before taking up the issue of class certification. See e.g., *Floyd v. Bowen*, 833 F.2d 529, 534 (5th Cir.1987); *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92–93 (D.C.Cir.2001); *Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941–942 (7th Cir. 1995). Such rulings, however, bind only the named parties. See e.g., *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir.1984); *Pharo v. Smith*, 621 F.2d 656 (5th Cir.1980), reh'g gr, cause remanded, 625 F.2d 1226 (5th Cir.

1980); see also *Manual for Complex Litigation*, Fourth, § 21.133. Until this Court certifies a class, the potential claims of putative class members other than the named plaintiffs are simply not before the court. Therefore, this judgment is only effective against those parties who are named plaintiffs in the current suits. While the ruling is only binding on the named plaintiffs, it may weigh heavily on whether the Court decides to certify this matter as a class action.

4. Phenolic tar is comprised of the chemicals cumene, phenol, and acetophenone.

5. Plaintiffs' Joint Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibits 7 and 8.

6. In the lawsuits, approximately 3,777 potential claimants were identified.

filed in state court, but were all removed to federal court on the basis of diversity of citizenship. After the nine lawsuits were removed to this Court, they were consolidated,[7] and the Court denied various motions to remand. The Court now turns to a discussion of the defendant's motion for summary judgment.

## II. The Pending Motion for Summary Judgment

Currently before the Court is a motion for summary judgment filed by Defendant Georgia Gulf Corporation pursuant to Federal Rule of Civil Procedure 56(c). Defendant contends that there are no genuine issues as to any material fact and that it is entitled to judgment in its favor as a matter of law under the facts of this case.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law."[8] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the "entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to estab-lish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, the nonmovant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[12] The nonmovant may accomplish this via affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[13] This burden, however, is not satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.[14]

Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[15] Unless there is

---

7. Rec. Doc. No. 22. The following civil actions were consolidated into this matter for pre-trial purposes: *Ernest Dominique, Sr., et al., v. Georgia Gulf Corporation,* 02–521–B–M3; *Barbara Shaw and Others Similarly Situated,* 02–524–C–M3; *Shasyoshi Anderson, et al., v. Georgia Gulf Corporation and Georgia Gulf Chemicals and Vinyls, LLC.,* 02–525–D–M3; *Jennifer Thomas v. Georgia Gulf Chemicals and Vinyls, L.L.C.,* 02–526–B–M3; *Ethel B. Wilson, et al., v. Georgia Gulf Chemicals and Vinyls, L.L.C.,* 02–527–D–M3; *Felton Stewart, et al., v. Georgia Gulf Corporation,* 02–528–B–M2; *Bill Abram, et al., v. Georgia Gulf Corporation, et al.,* 02–529–C–M3; and *William Taylor, et al., v. Georgia Gulf Corporation, et al.,* 02–672–A–M2.

8. Fed.R.Civ.P. 56(c)

9. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

10. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)(en banc)(quoting *Celotex,* 477 U.S. at 323–325, 106 S.Ct. at 2552).

11. *Id.* at 1075.

12. *Id.*

13. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996).

14. *Little,* 37 F.3d at 1075.

15. *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92–3 (5th Cir.1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir.1995).

sufficient evidence for a jury to return a verdict in a nonmovant's favor, there is no genuine issue for trial.[16]

In order to determine whether or not summary judgment should be granted, an examination of substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] Because the basis for federal jurisdiction in this case is diversity of citizenship, the Court must apply Louisiana substantive law.[18] Questions of Louisiana law are resolved "the way the Louisiana Supreme Court would interpret the statute based on precedent, legislation, and relevant commentary."[19] If the Louisiana Supreme Court has not addressed the issue squarely, the federal court should make an "*Erie* guess" as to how Louisiana's highest court would resolve the issue.[20]

## III. Law and Analysis

### A. Plaintiffs' Alleged Physical Injuries

Plaintiffs claim numerous physical injuries allegedly caused as a result of their exposure to phenol.[21] Plaintiffs complain that transient adverse health effects were actually suffered by numerous Plaintiffs. Plaintiffs argue that because these health effects, although admittedly slight, are physical injuries, Defendant's motion must be denied because the Defendant cannot establish the impossibility of some physical injury suffered by some Plaintiffs.[22]

The toxicology of phenol is well established in the scientific literature and in the industry. While phenol has an odor detection level of 0.04 ppm, the 8–hour human NOAEL (No Observed Adverse Effects Level) for phenol is 5.2 ppm, the ERPG (Emergency Response Planning Guideline) is 10.4 ppm, the TEEL (Temporary Emergency Exposure Limits) is 5.2 ppm, and the Cal AREL (California Acute Reference Exposure Level) is 1.5 ppm.[23] Further, the current Occupational Safety and Health Administration (OSHA) permissible exposure limit is 5 ppm as an 8–hour time-weighted average concentration.[24] In sup-

16. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

17. *Id.* at 248, 106 S.Ct. at 2510.

18. *Stephens v. Witco Corp.*, 198 F.3d 539, 541 (5th Cir.1999).

19. *Occidental Chemical Corp. v. Elliott Turbomachinery Co., Inc.*, 84 F.3d 172, 175 (5th Cir.1996).

20. *American Reliable Ins. Co. v. Navratil*, 445 F.3d 402, 403 (5th Cir.2006); see also *New Orleans Assets, L.L.C. v. Woodward*, 363 F.3d 372 (5th Cir.2004); and *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 564–565 (5th Cir.2004).

21. Plaintiffs' Joint Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 10.

22. Plaintiffs' Joint Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 10.

23. ERPG is the maximum airborne concentration below which it is believed that nearly all individuals could be exposed for up to one hour without experiencing other than mild transient adverse health effects or perceiving a clearly defined objectionable odor. TEEL is the threshold below which most people will experience no appreciable risk of health effects. Cal AREL is the level utilized for one hour exposure. Memorandum of Georgia Gulf Chemical & Vinyls, LLC in Support of Motion for Summary Judgment, p. 4, n. 12.

24. 29 C.F.R. § 1910.1000, Table Z–1 (2006).

port of its motion for summary judgment, Defendant relies on Plaintiffs' own expert's findings.[25] According to Plaintiffs' expert, the phenol concentrations were no higher than 0.30 ppm anywhere within the odor threshold of approximately 17 kilometers, or 10.625 miles from the source.[26] The report of the Plaintiffs' expert states that the level of phenol exposure was well below any of the levels recognized in the scientific literature as capable of causing physical injury to humans.[27] Plaintiffs have offered no other scientific evidence which would dispute these reports and support their claim for recovery in this case.

■ In a tort action for personal injury in Louisiana, a plaintiff must establish by a preponderance of the evidence that it is more probable than not that the personal injury of which he complains was caused by the defendant's conduct.[28] In exposure cases, it is clear that the causation element requires scientific evidence. In *Allen v. Pennsylvania Engineering Corp.*, the Fifth Circuit noted that "[s]cientific knowledge of the harmful level of exposure, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."[29] *Allen* involved the situation of whether the manufacture of ethylene oxide (EtO) should be liable to the estate of a hospital worker who had exposure to EtO. The Fifth Circuit found the scientific evidence lacking and therefore upheld the district court's refusal to allow certain expert testimony regarding the matter.[30] Further, the court noted that regulatory and advisory bodies make prophylactic rules governing human exposure based on proof that is reasonably lower than that appropriate in tort law, which "traditionally make[s] more particularized inquiries into cause and effect" and requires a plaintiff to prove "that it is more likely than not that another individual has caused him or her harm."[31]

The Fifth Circuit, in *Moore v. Ashland Chemical Inc.*, applying Texas law, also found that where physical injuries are unaccompanied by scientific evidence, causation is often lacking.[32] In *Moore,* a worker

---

25. Memorandum of Georgia Gulf Chemical & Vinyls, LLC in Support of Motion for Summary Judgment, p. 4, n. 14. Defendant disputes and reserves the right to challenge the methodology and conclusions of the Plaintiffs' experts. *Id.*

26. *Id.*

27. *Id.* at p. 5, n. 15–16, citing Exhibit B, Affidavit of Dr. Gary Krieger. The Plaintiffs offer no evidence, reports, studies or standards predicting a phenol concentration below 0.30 is capable of causing physical injury to humans.

28. *Maranto v. Goodyear Tire & Rubber Co.,* 650 So.2d 757, 759 (La.1995); see also *American Motorist Insurance Co. v. American Rent-All, Inc.,* 579 So.2d 429 (La.1991).

29. 102 F.3d 194, 199 (5th Cir.1996), citing *Wright v. Willamette Industries, Inc.,* 91 F.3d 1105, 1107 (8th Cir.1996).

30. *Id.,* at 198–199. While deciding *Allen,* the Fifth Circuit cited *Wright v. Willamette Indus-* tries, Inc. extensively. In *Wright,* the Eighth Circuit held that, under Arkansas law, plaintiffs had failed to produce evidence that they were exposed to harmful levels of formaldehyde in an exposure action. 91 F.3d 1105. In determining what a plaintiff must show to recover in a toxic exposure case, the court held "we think that there must be evidence from which the fact-finder can conclude that the plaintiff was exposed to levels of that agent that are known to cause the kind of harm that the plaintiff claims to have suffered." *Id.,* at 1107. The court continued, "there must be evidence from which a reasonable person could conclude that a defendant's emission has probably caused a particular plaintiff the kind of harm of which he or she complains before there can be recovery." *Id.*

31. *Allen,* 102 F.3d at 199, citing *Wright v. Willamette Industries, Inc.,* 91 F.3d 1105.

32. 151 F.3d 269, 278 (5th Cir.1998), *cert. denied,* 526 U.S. 1064, 119 S.Ct. 1454, 143 L.Ed.2d 541 (1999).

was exposed to toluene and sued for physical injuries based on his exposure.[33] The district court refused to allow one of the plaintiff's experts to testify regarding the cause of the plaintiff's physical injuries because of a lack of scientific evidence.[34] Sitting *en banc*, the Fifth Circuit affirmed the district court stating "some objective, independent validation of the expert's methodology" is needed before an expert can be allowed to testify. More importantly, the en banc court noted: "[i]n the absence of an established scientific connection between exposure and illness ... the temporal connection between exposure to chemicals and an onset of symptoms, standing along, is entitled to little weight in determining causation."[35]

It is also important to note that several Louisiana state courts and federal courts applying Louisiana law have endorsed the view that when the scientific evidence does not provide for exposure beyond the potentially harmful levels, recovery should not be allowed. In *Bonnette v. Conoco, Inc.*, the Louisiana Supreme Court consid-

ered whether to allow compensatory damages for slight exposure to asbestos which could lead to a slightly increased risk of developing asbestos-related disease.[36] For guidance, the court looked to its earlier decision in *Bourgeois v. A.P. Green Industries, Inc.*,[37] in which the court outlined the standard for recovery for medical monitoring.

In *Bourgeois*, the court outlined seven criteria the plaintiff must satisfy before the plaintiff would be allowed to recover for medical monitoring.[38] Among the criteria were: (1) significant exposure to a proven hazardous substance, (2) as a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease, and (3) plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease.[39] When considering whether exposure is significant, the court noted "a plaintiff must prove exposure

33. *Id.* at 272.

34. *Id.*

35. *Id.* at 278.

36. 837 So.2d 1219, 1230 (2003).

37. 716 So.2d 355 (1998). The standard outlined in *Bourgeois* was subsequently overturned by the legislature (see Acts 1999, No. 989 amending La. C.C. art. 2315 to provide that "[d]amages do not include costs for future medical treatment, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.").

38. *Id.* at 358–59.

39. *Id.* at 360–361. The court identified seven criteria a plaintiff must satisfy:

(1) Significant exposure to a proven hazardous substance;
(2) As a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease;
(3) Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease;
(4) A monitoring procedure exists that makes the early detection in the disease possible;
(5) The monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles.
(6) The prescribed monitoring regime is different from that normally recommended in the absence of exposure.
(7) There is some demonstrated clinical value in the early detection an diagnosis of the disease.

greater than normal background levels" of a substance which "must have been proven hazardous to human health."[40]

Applying the standard outlined in *Bourgeois*, the court in *Bonnette* refused to allow compensatory damages for only slight exposure which leads to a slightly increased risk of developing asbestos-related diseases, finding it "nonsensical to allow a plaintiff to recover compensatory damages for an increased risk of developing an asbestos-related disease upon less proof than that required for recovery of medical monitoring."[41]

■ In the matter now pending before the Court, Defendant has clearly demonstrated the absence of a genuine issue of material fact by establishing the level of exposure was not sufficiently high to give rise to the physical injuries complained of by Plaintiffs. As the Fifth Circuit mandated in *Allen* that in order for a plaintiff to recover in a toxic exposure case, the plaintiff must prove a harmful level of exposure. Plaintiffs in the instant case have failed to introduce evidence of exposure to a harmful level of phenol or any other hazardous substance to create a material issue of fact in dispute. In fact, according to the findings of Plaintiffs' own experts, the level of phenol released into the atmosphere was not considered harmful based on prophylactic standards set forth by various governmental and regula-

tory agencies.[42] As noted earlier in this opinion, the maximum exposure to phenol was 0.30 ppm, which was well below the levels considered hazardous.

In their opposition to Defendant's motion, Plaintiffs point to several illnesses and symptoms of exposure as evidence of exposure to hazardous levels of phenol.[43] However, as the Fifth Circuit held in *Moore*, "[i]n the absence of an established scientific connection between exposure and illness ... the temporal connection between exposure to chemicals and an onset of symptoms, standing along, is entitled to little weight in determining causation."[44] Furthermore, in *Richardson v. American Cyanamid Company*, the Louisiana Fifth Circuit Court of Appeal upheld a district court's refusal to award damages for alleged physical injuries in a case involving an emission of sulfur dioxide.[45] The state district court based its decision on a belief that the exposure level was below the OSHA safety standards.[46] Because the exposure level was below the OSHA standard, the state district court held the plaintiffs had failed to prove their alleged injuries were caused by the emission.[47]

Based upon the summary judgment evidence in the record, Defendant has clearly established the impossibility of physical injury suffered by Plaintiffs and is entitled to summary judgment as a matter of law under the facts of this case with respect to

---

*Id.*

**40.** *Id.* at 360.

**41.** *Bonnette*, 837 So.2d at 1231.

**42.** Memorandum of Georgia Gulf Chemical & Vinyls, LLC in Support of Motion for Summary Judgment, p. 5, n. 15–16.

**43.** Plaintiffs' Joint Memorandum in Opposition to Defendant's Motion for Summary Judgment.

**44.** *Moore*, 151 F.3d at 278.

**45.** 757 So.2d 135 (2000).

**46.** *Id.* at 142.

**47.** *Id.* at 144. See also *Schexnayder v. Exxon Pipeline Company*, 815 So.2d 156 (2002) (affirming a district court's denial of damages for physical injury where 1000 area residents sued for exposure to crude oil vapors but lacked scientific evidence to support their claims); and *In re Ingram Towing Company*, 1995 WL 241828 (E.D.La.1995)(finding no physical injury where a diesel spill released levels above the odor threshold but below the level allowed by OSHA workplace standards).

the alleged physical injuries suffered by Plaintiffs.

### B. Plaintiffs' Alleged Emotional Distress

For purposes of this motion, the Court finds that there is no dispute regarding the level of exposure. As noted earlier in this opinion, based on the reports of Plaintiffs' own air dispersion modeling experts, Plaintiffs' experts could not find phenol concentration any higher than 0.30 ppm anywhere within the model.[48] Defendant has accepted this as fact for the purposes of this summary judgment motion.[49] Further, as noted above, the low level of exposure is inadequate to support a finding of physical injury.

Generally, a defendant will not be held liable under Louisiana law where its conduct is merely negligent and causes only emotional injury unaccompanied by physical injury.[50] This general rule was outlined in *Moresi v. State, Department of Wildlife and Fisheries*.[51] In *Moresi*, the Louisiana Supreme Court considered whether a plaintiff could recover for mental disturbances caused by a defendant's ordinary negligence when the mental disturbance was unaccompanied by physical injury, illness, or other physical consequences.[52] The court refused to allow recovery for mental anguish absent a

physical injury except in "special circumstances."[53] Only where there is an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious," will recovery be permitted.[54]

To date, the Louisiana courts have identified only four instances in which recovery is allowed for mental anguish without physical injury. These instances all involve "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serve as a guarantee that the claim is not spurious."[55] The Court will review each of these four circumstances.

■ A plaintiff may recover damages for a defendant's infliction of emotional distress based on a separate tort involving physical consequences to the person or property of the plaintiff, such as an assault or a battery, false imprisonment, trespass to land, nuisance or the invasion of the person's right to privacy.[56]

A defendant's intentional infliction of emotional distress will also support an award for mental anguish damages.[57]

■ Furthermore, when the plaintiff is a direct participant in the accident causing the emotional injury, and the defendant owes a direct, specific statutory duty to the

---

48. Memorandum of Georgia Gulf Chemicals & Vinyls, LLC in Support of Motion for Summary Judgment, p. 4.

49. Defendant objects to the methodology used by Plaintiffs' air modeling experts, but for purposes of this motion, accepts their findings as fact. *See* Memorandum of Georgia Gulf Chemicals & Vinyls, LLC in Support of Motion for Summary Judgment, p. 4, n. 11 and 14.

50. *Moresi v. State, Department of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La.1990). See also *Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1235 (2003).

51. 567 So.2d 1081.

52. *Id.* at 1095.

53. *Id.* at 1096.

54. *Id.* at 1096.

55. *Id.*

56. *Id.* at 1095.

57. *White v. Monsanto Co.*, 585 So.2d 1205 (La.1991).

plaintiff to refrain from the specific conduct that causes the accident, damages for the infliction of emotional distress may be awarded, even absent physical injury.[58]

■ Finally, a bystander may recover an award for infliction of emotional distress where the bystander either views the accident or injury causing event or comes upon the accident before a substantial change.[59]

■ When a plaintiff does not fall into one of the above four categories, the plaintiff must prove the "claim is not spurious by showing a particular likelihood of genuine and serious mental distress arising from special circumstances."[60] If the plaintiff is unable to meet this standard, recovery for mental distress is not allowed absent physical injury.

■ None of the four exceptions to the general rule are applicable under the facts of this case. There are no allegations of an independent tort committed by Defendant. Plaintiffs have also failed to set forth any evidence demonstrating a claim for intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must prove (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[61] Plaintiffs have not offered any evidence showing the conduct of Georgia Gulf was so extreme and outrageous as to go beyond all possible bounds of decency, or that Georgia Gulf or any of its employees desired to inflict or knew that emotional distress would be certain or substantially certain to result from their conduct. Plaintiffs have not introduced any evidence that the emotional distress which they suffered was severe.

Plaintiffs also failed to introduce any evidence that would bring Plaintiffs within the bystander exception. Plaintiffs argue that those outside the smoke plume should be able to recover as bystanders under *Lejeune v. Rayne Branch Hospital*.[62] The standard outlined in *Lejeune* for bystander recovery was codified into Louisiana Civil Code art. 2315.6. To recover under article 2315.6, "the claimant's mental anguish or emotional distress must be severe, debilitating and foreseeable."[63] Plaintiffs have failed to offer evidence establishing that

---

**58.** *Clomon v. Monroe City School Board,* 572 So.2d 571, 586 (La.1990); *Guillory v. Arceneaux,* 580 So.2d 990 (La.App. 3 Cir.1991), *writ denied,* 587 So.2d 694 (La.1991).

**59.** *Lejeune v. Rayne Branch Hospital,* 556 So.2d 559, 570 (La.1990). The standard first annunciated in *Lejeune* was clarified in *Dumas v. Angus Chemical Company,* 728 So.2d 441, 447 (La.App. 2 Cir.1999), *writ denied,* 741 So.2d 19 (1999). In *Dumas,* the Second Circuit described the *Lejeune* criteria:

First, the claimant must either view the accident or injury-causing event or come upon the accident scene soon thereafter and before there is substantial change in the victim's condition. Second, the direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that someone in the claimant's position would suffer serious mental anguish from the experience. Third, the emotional distress must be both serious and reasonably foreseeable to allow recovery. Compensation should be allowed when the emotional injury is both severe and debilitating.

The *Lejeune* bystander recovery criteria were subsequently codified as Louisiana Civil Code art. 2315.6.

**60.** *Bonnette v. Conoco, Inc.,* 837 So.2d at 1235.

**61.** *White v. Monsanto,* 585 So.2d at 1209.

**62.** 556 So.2d 559, 570 (La.1990).

**63.** La. C.C. art. 2315.6.

their mental anguish was severe, debilitating or foreseeable. While failing to offer any evidence, Plaintiffs still contend the Court should deny summary judgment to the plaintiffs located outside the dispersion plume based on *Lejeune*. According to Plaintiffs, the Defendant seeks relief which chooses to "ignore the specifics, details and facts of release itself" which may lead to recovery for mental anguish.[64] Plaintiffs claim those outside the plume are entitled to "bystander" status because they may have been close enough to see the black smoke.[65] This argument fails to meet the standard outlined in Louisiana Civil Code art. 2315.6. Plaintiffs have failed to present any evidence in the record to establish serious mental anguish or severe, debilitating, and foreseeable emotional distress as required by Article 2315.6. Therefore, Plaintiffs located outside the plume who base their recovery on bystander status have failed to assert a genuine issue for trial under the law and facts of this case.

It is also clear that Plaintiffs cannot be considered direct participants in the accident itself and, therefore, the exception for direct participation in the accident is inapplicable. Plaintiffs claim those within the dispersion plume are "participants" within the "zone of danger" and therefore are entitled to mental anguish damages as an exception to *Moresi*.[66] Plaintiffs' argument misinterprets Louisiana law and is without merit. The Louisiana Court of Appeal for the Second Circuit addressed whether a plaintiff is to be considered a participant in *Dumas v. Angus Chemical Co.*[67] *Dumas* involved an explosion at a fertilizer plant. Persons in the surrounding community brought several claims, including one for mental anguish, based on the theory that they were direct participants.[68] The Second Circuit rejected the notion that they were direct participants, finding that to be considered a direct participant a plaintiff must be "involved to a reasonable degree [proximity in time and distance] in the event causing harm."[69] The court noted the plaintiffs "were not 'participants' who were 'involved' in the explosion," and therefore could not recover.[70]

Further, in *Clomon v. Monroe City School Board*, the Louisiana Supreme Court discussed what showing is required for a plaintiff to be a participant.[71] Justice Dennis stated that to have a claim for mental anguish, the defendant must violate a special statutory duty to the plaintiff and "thereby cause[ ] her to become an *actual participant in an accident* ... where mental anguish was clearly foreseeable...."[72]

---

64. Plaintiffs' Joint Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 11.

65. *Id.*

66. *Id.* at p. 6.

67. 728 So.2d 441.

68. *Id.* at 447–449.

69. *Id.* at 448.

70. *Id.* at 449.

71. 572 So.2d 571 (La.1990).

72. *Id.* at 583–584 (emphasis added). Given the lack of evidence of mental distress in this case, it should be noted the severe and debilitating nature of the mental distress which stemmed from the accident in which the Louisiana Supreme Court allowed recovery in *Clomon*. In *Clomon*, an eighteen year old college student was driving home from school when she struck and killed a child departing a special education bus. She brought an action against the school board, claiming the school bus driver acted negligently when the child exited the bus, causing her to strike the child. *Id.* at 572. As a result of the accident, the plaintiff suffered post-tramatic stress disorder, spending twenty-one days in an institution undergoing treatment and therapy from a psychiatrist. *Id.*

In support of Plaintiffs' contention that they are participants, Plaintiffs cite *Robertson v. Monsanto.*[73] *Robertson* involved a release of ammonia at the Monsanto Company Plant in Luling, Louisiana.[74] The district court granted summary judgment for the defendant chemical company as to the plaintiffs who were located out of the dispersion plume but denied summary judgment to the remaining plaintiffs, noting a dispute existed between the defense and the plaintiffs' experts.[75] Surprisingly, Plaintiffs in the current matter embrace the district court's opinion in *Robertson*, although the *Robertson* court clearly held that those plaintiffs located outside the dispersion plume are not entitled to recovery.[76] For the same reasons set forth above and by the district court in *Robertson*, the present Plaintiffs located outside the dispersion plume cannot recover damages. It must be emphasized that the court's ruling in *Robertson* does not stand for the proposition that a genuine issue of material fact exists for those within the dispersion plume merely because they were within the dispersion plume absent contradictory evidence.[77]

None of Plaintiffs in the current matter were involved to a reasonable degree in the event causing harm nor were Plaintiffs actual participants in the accident such that mental anguish was a clearly foreseeable injury. All Plaintiffs were outside the Georgia Gulf facility and cannot be considered direct participants in the accident. Therefore, Plaintiffs do not meet this exception to the general rule outlined in *Moresi* under the facts of this case.

Because none of the *Moresi* exceptions apply, this Court must and indeed does apply the general rule outlined in *Moresi*. Under this standard, a party may not recover for mental anguish absent physical injuries unless there are special circumstances likely to guarantee the claim is not spurious. Applying this standard to the facts of this case, this Court finds Plaintiffs cannot recover for mental anguish. There is no jurisprudential or evidentiary support in the record on which this Court could find that the Plaintiffs could recover under this standard. In fact, the Louisiana Supreme Court has generally declined recovery for mental anguish absent physical injury in chemical exposure cases factually similar to the case before the court.

In *Bonnette v. Conoco, Inc.*, the Louisiana Supreme Court rejected an award for mental anguish absent physical injuries in an asbestos exposure case.[78] After rejecting an award for compensatory damages for the slightly increased risk of developing asbestos-related diseases, the court rejected an award for damages relating to mental anguish, requiring an award for mental anguish to be accompanied by a manifest physical injury.[79] Citing *Moresi*,

---

**73.** 2005 WL 940563 (E.D.La.2005).

**74.** *Id.*

**75.** *Id.* at 2005 WL 940563, *4.

**76.** Plaintiffs' Joint Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 7.

**77.** In support for the argument the Plaintiffs should be considered "participants" in the accident, Plaintiffs also cite *Morris v. Maryland Casualty Company*, 657 So.2d 198 (1995). *Morris* involved the emotional distress claim of a train engineer who was involved in a car-train collision in which the driver of the car was killed. The engineer suffered "serious psychological damages as a result of this accident." *Id.* at 199. What was important to the court in *Morris* was the plaintiff's involvement in the accident which caused his serious psychological damage. *Id.* at 200. There is no evidence of such a level of involvement by any of the Plaintiffs here, nor is there any evidence of serious psychological damage among any Plaintiffs.

**78.** 837 So.2d 1219.

**79.** 837 So.2d at 1233–34.

the court noted the inherent problems in "awarding damages for mental disturbance in the absence of manifest physical injury ...." According to the court, these problems "are particularly pronounced in cases involving exposure to asbestos or other carcinogens."[80] In denying recovery for mental anguish, the court noted that "it is a fact of modern life that most of us are exposed to *de minimus* amounts of asbestos on a daily basis" and the plaintiffs "have failed to prove their exposures resulted in a particular likelihood of genuine and serious mental distress."[81]

Although *Bonnette* and *Moresi* dealt with exposure to asbestos, the reasoning is equally applicable to the facts of this case. Under this standard, Plaintiffs are not entitled to recover damages for mental anguish as a matter of law under the facts of this case. Plaintiffs have "failed to prove their alleged exposure resulted in a particular likelihood of genuine and serious mental distress."

## IV. Conclusion

The Court finds that Plaintiffs have no legally cognizable damage claims. Plaintiffs located in the area not within the dispersion plume have no claims for physical injuries because they were not exposed to anything which could have caused them physical harm. Further, these Plaintiffs cannot recover damages for emotional distress, as they have failed to establish that their claims are not spurious by showing a likelihood of genuine and serious mental distress arising from special circumstances.

The Court further finds Plaintiffs located within the dispersion plume have not created a genuine issue of material fact as to whether any of them sustained an actual physical injury. Plaintiffs failed to introduce evidence of sufficient exposure to phenol. These Plaintiffs cannot recover damages for emotional injures because they also failed to demonstrate that their claims are not spurious by showing a particular likelihood of genuine and serious mental distress arising from special circumstances.

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED. The Plaintiffs shall have 20 days to file a motion to certify this matter as a class action or to request the Court to dismiss their earlier request for class certification.[82]

IT IS SO ORDERED.

---

80. *Id.* at 1234.

81. *Id.* at 1236.

82. As noted earlier (see *supra* n. 3), this ruling may weigh heavily on whether the Court decides to certify this matter as a class action and the parties should consider this ruling when deciding how to proceed.